### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

---

### WILLIAM L. BURT vs. MERCHANTS' INSURANCE COMPANY.

Suffolk. January 26. — March 17, 1874. AMES & DEVENS, JJ., absent.

The value of land taken for a post-office in Boston, pursuant to the St. of 1873, c. 189, and the U. S. St. of 1873, c. 227, is to be estimated as of the time of filing the petition, and not as of the time of the trial and verdict.

In estimating the value of land taken under the Gen. Sts. c. 43, § 55, and under the St. of 1873, c. 189, the situation of the estate and the manner of its occupation are to be taken into consideration, but no contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole.

A bill of exceptions should not set forth the whole charge to the jury, but only the points of law raised at the trial and the rulings thereon. ·

PETITION filed April 16, 1873, under the St. of 1873, c. 189, § 2,* by William L. Burt, as the agent employed by the United

---

* The St. of 1873, c. 189, is entitled " An act giving the consent of the Commonwealth to the United States for the purchase of additional land in the city of Boston for the sub-treasury and post-office site," and is as follows:

" SECT. 1. The consent of the Commonwealth is granted to the United States to purchase additional land for the site of the new post-office and sub-treasury building in the city of Boston, the said additional land lying adjoining the tract already purchased by the United States, in the block bounded by Devonshire, Water, Congress and Milk Streets, and constituting, with the tract already purchased, the entire block or square bounded by Devonshire,

States under said statute, to the Superior Court for this county, against the Merchants' Insurance Company, and Charles D. Head

---

Water, Congress and Milk Streets. The said tracts of additional land are, first, an estate now or formerly owned by the Merchants' Insurance Company; second, an estate now or formerly owned by Peter B. Brigham; third an estate now or formerly owned by Edward Wigglesworth; fourth, an estate now or formerly owned by Thomas Wigglesworth; fifth, an estate now or formerly owned by Thomas Goddard, trustee; and all of said estates constitute the estate lying between the property already acquired by the United States on the west, and Congress Street on the east, Water Street on the north, and Milk Street on the south. Jurisdiction is ceded to the United States over said tracts respectively, or any part or portion thereof, when the United States shall become the owner thereof: *provided, always*, that the Commonwealth shall retain and does retain concurrent jurisdiction with the United States in and over all the lands aforesaid, so far that civil and criminal processes issuing under the authority of the Commonwealth may be executed on said land, and in any buildings erected or to be erected thereon, in the same way and manner as if jurisdiction had not been granted as aforesaid; and *provided*, that the exclusive jurisdiction shall revert to and revest in the Commonwealth of Massachusetts, whenever said lands shall cease to be used by the United States for public purposes.

"SECT. 2. If the agent or agents employed by the United States, and the person or persons owning or interested in either of said estates, cannot agree upon the price to be paid for their interest therein, the agent or agents of the United States may apply by petition to the superior court for the county of Suffolk, such petition to be made separately as to each of said estates, describing the estate and praying to have a valuation thereof made by a jury, and the court, after due notice to the owner or owners of the estate described in such petition, and to all parties interested therein, to be given in such manner as the court may order, is empowered and required to hear the parties and finally determine the value of their said estate (taking into consideration the injury or benefit, if any, which said owners or persons interested may sustain in any adjoining estate) by a jury, who shall be sworn to faithfully and impartially make such appraisement and valuation. And if any person or persons other than the owner or owners of said estate shall appear and claim any interest in said estate, the value to the owner of the fee, and to all persons interested in said estate, shall be ascertained and apportioned in the same manner as is provided for the assessment of damages in section fifty-five of chapter forty-three of the General Statutes; and the clerk of the superior court for civil business, for the county of Suffolk, shall issue writs of *venire facias* for jurors to make the appraisements and valuations aforesaid, and shall therein require the attendance of said jurors on such day as the court shall order, and said writs shall be severally issued, delivered, transmitted, served and returned in the same manner as now provided as to other

and Francis Curtis, receivers of said company, which had been declared insolvent. The petition described the first estate men-

---

juries by chapter one hundred and thirty-two of the General Statutes, and the value aforesaid having been ascertained by the verdict of said jury, and said verdict accepted and recorded by said court, and the amount thereof paid or tendered, within one month after final judgment, to the said owner or owners or persons interested, or their agent or attorney, together with their reasonable costs and expenses to be taxed by said court, or in case of their neglect or refusal to receive the same, the amount of said verdict, costs and expenses having been paid into the treasury of the Commonwealth, for their use and subject to their order, the fee of said estate shall be forever vested in the United States: *provided, however,* that neither the United States, nor their agent or agents, shall enter into or take possession of said estates, respectively, or exercise any act of ownership thereon, until the amount of said verdict, costs and expenses aforesaid shall have been actually paid as aforesaid; and *provided, also,* that all the charge of said application and appraisement shall be paid by the United States. The applications aforesaid may by agreement of parties be heard and determined together, but a separate valuation shall be made and a separate verdict rendered in each case.

" SECT. 3. This act shall be void unless a suitable plan of the additional land obtained or purchased by the United States under this act, shall be filed in the office of the secretary of the Commonwealth within one year after the title shall be acquired.

" SECT. 4. This act shall take effect upon its passage." (April 15, 1873.)

The act of Congress of March 3, 1873, *c.* 227, 17 U. S. Sts. at Large, 510, 524, provides : " That the following sums be, and the same are hereby, appropriated for the objects hereinafter expressed : " " To enable the Secretary of the Treasury to obtain by purchase, or to obtain by condemnation in the courts of the State of Massachusetts, the several lots or parcels of land lying easterly of the present site of the new post-office in Boston, and bounded by said site, Water Street, Congress Street and Milk Street, upon the lines of said streets as they are now established or may hereafter be established by due process of law, and for repairing the injuries to the post-office building caused by fire, and to extend the building over said site, eight hundred thousand dollars: *Provided,* that no money appropriated for this purpose shall be used or expended in the purchase of the several lots or parcels of land for said site until a valid title thereto shall be vested in the United States, nor until the State of Massachusetts shall cede its jurisdiction over the same, and shall duly release and relinquish to the United States the right to tax or in any way assess said site and the property of the United States that may be thereon during the time that the United States shall be or remain the owner thereof: *And provided further,* that the Secretary of the Treasury shall make no purchase of land under this provision until the city of Boston shall cause the triangular space between Congress, Pearl, Milk and Water Streets to be opened to the

tiuned in § 1, being the estate of the Merchants' Insurance Com-pany, on the corner of Congress and Water Streets in Boston, and alleged that the plaintiff had attempted to purchase the said land of the defendants, and that the parties could not agree upon the price to be paid therefor; and prayed to have a valuation of the defendants' estate made by a jury in the manner provided in said chapter.

Trial before *Rockwell*, J., who, after verdict, allowed the fol-lowing bill of exceptions:

"The receivers of the Merchants' Insurance Company were the general owners of said estate. Charles L. Haley was the lessee thereof, and Avery & Harris were sub-lessees under said Haley. The buildings on the land were totally destroyed by fire November 9 and 10, 1872, and only land was taken.

"The defendants offered evidence to show the value of said estate at the time of trial, claiming that the valuation to be made was to be the value of the estate at the time of the trial, as the nearest approach to the time of the taking, and not the value at the time of filing the petition: to which evidence the plaintiff objected; but it was admitted.

"The plaintiff asked for the following instructions: That in this case, under the St. of 1873, c. 189, the jury are to determine the value of the land of respondents, and their respective inter-est therein, at the time of filing the petition in this case, to wit, April 16, 1873, and not at any subsequent time, nor at the time of the hearing before the jury: That in no event, as against the said petitioner, is the value of said land to be increased beyond its fair cash market value, by reason of any apportionment of damages between the respective parties claiming an interest in said land; notwithstanding the jury should be of opinion that, as between the respondents, under their several contracts and leases, the aggregate value of their respective claims might or should exceed, or fall short, of the fair cash market value of said land, free from and not subject to any lease or contract made upon or concerning said land, as against the petitioner: That, as

public and graded and paved at the expense of the city, and shall widen Milk and Water Streets, where the buildings have been destroyed by fire, to a width of at least sixty feet."

against the United States, the petitioner, the jury are to determine the value of said land, as land, at its fair cash market value, free from, and not subject to, any lease or contract made upon it, and as though one person owned it as one estate in fee, with interest thereon from April 16, 1873. These instructions the presiding judge refused to give."

The bill of exceptions then set forth at length the entire charge to the jury; so much of which as is material to the understanding of the points decided by the court was as follows:

"The object of the proceeding is to ascertain the value of certain real estate which the government of the United States manifests a desire to purchase, and to pay therefor the fair market value of the interest and claims of the respective owners of the estate. It is the fair market value that you are to ascertain; and your verdict will consist of several items, substantially these: In the first place, you will ascertain the total amount of the value to the owners of the estate, estimating the same as an entire estate and as if the same was the sole property of one owner in fee simple; and that may not improperly be called the total value of the estate. In the next place, you will ascertain the fair market value of the estate to the Merchants' Insurance Company, who, in this case, are the owners of the fee of the land. In the third item, you will ascertain and find the fair market value of the interest and term of Haley, the first lessee. In the fourth item, you will ascertain the fair market value of the interest and term of Harris & Avery, the sub-lessees. And the sum of the last three items will be equal to the first; for it is a division that you are to make among these several parties in interest. The time at which these values is to be ascertained and fixed is the present time, the time of the trial and verdict, as being nearest the time when the purchase would be made and completed.

"You will, then, proceed to consider the evidence in that light, to ascertain the fair market value at this time. And I have stated that the first thing for you to ascertain is the total market value of the entire estate, to be ascertained from the evidence; that is, its value to the owners of the estate, estimating the same as an entire estate as if the same was the sole property of one owner in fee simple; and I add now, regard being had to the situation of the estate, and the manner of its occupation, that may

not improperly be called the total value. You are to estimate it at its value to the owners of the estate, not to the owner, — to the owners of the estate. It is the value to all the owners that is to be found; and you are to estimate the same as an entire estate as if the same was the sole property of one owner in fee simple; not as the sole property of the owner in fee simple, but as if it was the sole property of one owner in fee simple. You will then ascertain the value to the owners as an entire estate and as if there was but one owner in fee simple. You must, therefore, ascertain the value to all the owners; and, in doing so, you must estimate it as an entire estate and as if the same was the sole property of one owner in fee simple. Thus you will get the total value, or the fund which you are to divide among the several owners.

" Now, the several owners in this case are, first, the Merchants Insurance Company, who own the fee of the land; another owner is Haley, who leased this property of the Merchants' Insurance Company, for fifteen years from the 1st of March, 1870, and who has parted, substantially, with the value of his lease, for a consideration, but the term which he has conveyed to the sub-lessees is a little shorter in point of time than the lease to him; he is, therefore, an owner of this property, and he holds an interest in a term. The other owners are Harris & Avery, the sub-lessees, who hold the lease under Haley. These, then, are the three owners; and it is the value to them that you are to ascertain. And, when you come to apply the rule, that it is to be estimated as an entire estate as if the same was the sole property of one owner in fee simple, you will remark that it is not the same as if the language was, ' the value to the owner of the estate in fee simple.' It is the value as it would be to one owner in fee simple : and then that total value is to be divided between this owner in fee simple and the owners of the terms.

" The counsel for the United States contend, that this total value to all the owners of the estate is not so large as it would be if the term created by the leases was not in existence. In speaking of the term created by the leases in this connection, I may as well call it a term, though it belongs to the two owners, — Haley and Avery & Harris. The counsel for the United States contend that the value of the entire estate, estimated as I have stated, should

not be found by you to be so large as it would be if the term
created by those leases was not in existence.    That is to say, that
the existence of the term diminishes the total value of this prop-
erty, estimated in this way, from what it would be if there was
no such term.    The term which remains is eleven years and eight
months.    Does that term affect the total value of this estate to
the owners ?    You will consider that in weighing the evidence,
and making up this first item in your verdict ; and if you find,
upon the whole evidence, that the existence of that term makes
the total value of this estate, estimated as I have said, less than
it would be if the term was not in existence, you will regard that
fact in making up your verdict, and make it up at the value, as
you determine it ought to be, in the present situation of the es-
tate, and the manner of its occupation.    If you are satisfied, from
the whole evidence in the case, that the existence of that term
has no effect upon the total value, you will so find ; and your
verdict on that particular item will not be affected by the exist-
ence of the term.

"Having ascertained the total value, in this first item of your
verdict, you have then to ascertain three things more ; and, when
you have ascertained them, you will have ascertained three items
which will exhaust this total value, into which this total value
will be divided.    And the rules by which you are to ascertain
them are these :

"In ascertaining the value of the interest and claim of the own-
ers of this estate in fee, the Merchants' Insurance Company, you
will look at their interest.    You will see that they have conveyed
a part of the interest which they held ; you will ascertain the fair
market value of their interest, as it stands to-day, with a term
created upon it by their lease having about eleven years and eight
months to run ; and consider, also, that that lease secures to them
$15,000 rent, annually, payable quarterly, according to the terms
of the lease.    And you may, if you please, and it seems good to
you, consider in this valuation the term as an incumbrance upon
the fee of the estate owned by the Merchants' Insurance Com-
pany ; and you may, if you please, come at the result of what the
fair market value of their interest is, by ascertaining its value as
a fee, and then deducting from that value the value of this in-
cumbrance.    And the incumbrance is made by the term, and the

term is owned by the other parties; and if there is anything in the case to induce you to believe that the injury of that incumbrance to the owners of the fee is exactly equal to the value of the term to the tenants, it may be the proper way for you, having ascertained the injury which the term makes to the owners in fee simple, to consider that as the value of the term to the tenants, and then to divide that value between the tenants, thus making the third and fourth items of your verdict.

" But you may not be of that opinion. It is not for the court to decide facts upon the evidence; it is only for the court to suggest the rules of law, in the light of which you are to examine the testimony. There are various provisions in these leases; and you will recollect them, and have them before you. And if those leases, by virtue of any or all of their provisions, alter that fact, and show to you that the injury which this term considered as an incumbrance creates to the owners of the fee, the diminution of their value is not in amount the same as the value of the term to the tenants, you will then make the division in the light of those facts. That is to say, the division will be different from what it would be if you did not arrive at that opinion, by taking something from one and adding it to the other, and still leaving the sum of the three last items in your verdict equal to the total value as ascertained by the first item.

" Having proceeded thus, if you choose to adopt this method, you will have found, first, the total value, according to the law; you will then have divided it into three parts, and assigned each part to the three several owners, and thus have performed your duty.

" The total market value of the entire estate is first to be ascertained from the evidence; that is, its value to the owners of the estate, estimating the same as an entire estate as if the same was the sole property of one owner in fee simple, regard being had to the situation of the estate, and the manner of its occupation. The owners are the Merchants' Insurance Company, holding the fee, Haley, the lessee, and Harris & Avery, the lessees under him. It is the value to all these owners that is to be ascertained as the first item in your verdict. That will be the sum which the United States are to pay, and may properly be called the total value. This sum is the aggregate value of the entire estate to

the owners before named, estimating it as an entire estate as if the same was the sole property of one owner in fee simple. This is not the same as the value of this estate to the owner of the fee in it, but is larger, and includes that. You are to ascertain the total value from the evidence.

" The counsel for the United States contend that this total value is not so large as it would be if the term created by the leases was not in existence. If you are satisfied that the existing term of eleven years and eight months affects this total value in that way, you will consider it in weighing the evidence, and making up this first item in your verdict." To all these rulings and instructions and refusals to instruct, the plaintiff excepted.

Exceptions were also taken by Avery & Harris, but as these were not passed upon by the court they are omitted.

*G. P. Sanger & G. A. Somerby*, (*T. S. Dame* with them,) for the petitioner.

*B. F. Brooks & G. O. Shattuck*, (*O. W. Holmes, Jr. & M. Storey* with them,) for the receivers of the Merchants' Insurance Company. The time at which the value of the land to be paid for by the United States to these respondents is to be taken is not expressly fixed by statute ; but the price to be fixed by the jury must be the price at the time when the owner shall have a right to it. It has been laid down by many cases hereafter cited, that the right to damages on the one side, and the title to the estate taken on the other, vest at the same moment. The land remains the respondents' until the title passes to the United States ; and their title cannot be divested without giving them the value of what is then taken from them. Therefore the value must be estimated as nearly as practicable at the time of the taking. The question thus modified is, When is the land taken ? The answer must be drawn from a construction of the statutes which take the land, in the light of general principles of constitutional law.

The enacting or imperative clause of the act of Congress is simply, " The following sums are hereby appropriated." The clause concerning this land goes no further than to state that one item of the appropriation is made " to enable " the secretary to buy the land of the parties *in pais*, or " to obtain it by condemnation in the courts of Massachusetts." The act, on its face, only

purports to provide a fund, and to authorize a certain person to spend it in a certain way.

If there is a purchase *in pais*, the act of the parties, not the statute, transfers the title. But the secretary has not bought our land, and is trying to obtain it by condemnation in the Massachusetts courts, which is the other method of acquisition provided by the act. That is an acquisition subsequent to the passing of the act. For that simply permits the secretary to " obtain by condemnation ; " that is, as the result of a process instituted for the purpose of obtaining it. Morever, the title will not pass by force of the act of Congress. That act does not confer the jurisdiction on the state court by virtue of which the condemnation is made. If it had attempted to do so, it would be held that such a jurisdiction could not be created in that way. 1 Kent Com. (12th ed.) 402. By the mere fact of authorizing proceedings in the state courts, the United States submit to the authority of the state legislature ; for those courts cannot proceed in the case without an act of the state legislature specially authorizing them to do so. Besides, the appropriation is made on the condition that the state shall cede jurisdiction and relinquish other rights, which expressly requires the concurrence of the state legislature.

The act of Congress, therefore, goes no further than to permit the acquisition of certain property under or by means of the state laws , and the taking is by the act of the state legislature. *Burt* v. *Merchants' Ins. Co.* 106 Mass. 356, 363. *Gilmer* v. *Lime Point,* 18 Cal. 229, 258.

By that act the " fee of said estate shall be forever vested in the United States," when the amount of the verdict, &c., is paid, and not before ; and until such payment, the United States are neither to take possession nor exercise any act of ownership. The taking therefore is at the date of payment, and not before. The reason for thus postponing the vesting of the title in the United States is similar to that which has dictated the clause in many state constitutions requiring payment before the appropriation of private property. The remedy against a private individual may be worthless because he has no money. The remedy against the United States is nearly worthless, because it is expensive, dilatory and uncertain, and depends on the consent of the defendant. If, however, the title of the United States had vested at an earlier

time, the state legislature would not have undertaken to prohibit their dealing with the land in accordance with their rights. The simpler course was adopted of giving them no rights until the owners of the land were secure.

There are two classes of cases. In one class, which includes the taking of land for streets and railroads under our laws, the title is held to pass at the time of the resolve to lay out the street or the location of the railroad, although the resolve may not be carried out, and the location is liable to be subsequently changed or abandoned. And on this ground, and no other, the right to damages is held to vest at the same time, and the damages are therefore estimated as of that date, with interest. "The effect of the location is to bind the land described to that servitude, and to conclude the land-owner and all parties having derivative interests in it from denying the title of the company to their easement in it. We think, therefore, that the filing of the location is the taking of the land. It is upon that, that the owner is forthwith entitled to compensation; it is that act which gives the easement to the corporation, and the right to have damages to the owner of the land." Per Shaw, C. J., *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 340, 360. Similar language is used with regard to the laying out of ways, and the time of estimating damages is fixed with reference to that consideration. The defendants "are withholding nothing from the plaintiff; not the estate taken, for that the public have acquired. . . . . The true rule would be, as in the case of other purchases, that the price is due and ought to be paid at the moment the purchase is made. . . . . The damages must be appraised as they would have been on the day of the taking. . . . . The jury were correctly instructed, that in the estimate of damages done to an estate partly taken for the public use, the value of the estate on the day of the taking was the true value to be taken by the jury, in their appraisement of the damages," &c. *Parks* v. *Boston*, 15 Pick. 198, 208. *Harrington* v. *County Commissioners*, 22 Pick. 263, 268, *Hallock* v. *County of Franklin*, 2 Met. 558, 559. *Shaw* v. *Charlestown*, 3 Allen, 538. *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313, 326. *Edmands* v. *Boston*, 108 Mass. 535, 550.

The second class contains every case which has been decided

under statutes which resemble this in providing that the title shall pass when the money is paid. In these cases, unlike the last, the parties seeking to obtain the land are the movers, for the very reason that they cannot get the title until after verdict and payment; and it is uniformly held, not only that they have no vested rights in the land, but that they are at liberty to withdraw from the proceedings before that time. It is held, conversely, that the party whose land is proceeded against has no vested right to his damages. *Baltimore & Susquehanna Railroad* v. *Nesbit*, 10 How. 395, 399. *Graff* v. *Baltimore*, 10 Md. 544, 552. *Stacey* v. *Vermont Central Railroad*, 27 Vt. 39. *Graham* v. *Connersville & New Castle Junction Railroad*, 36 Ind. 463.

As the damages to be estimated are those to which the owners will have a vested right hereafter, and as exact evidence of what they will be is not attainable, it follows that in this class of cases, evidence of the value at the point of time nearest to the payment, that is, at the time of the trial, is admissible to show what the value will be then; and this view is equally supported by the principle of both classes of cases.

*F. V. Balch*, for Haley. It is not true that the United States cannot be called upon to pay anything more than the fair cash value of the land, unaffected by any lease or contract; but if it is, the judge gave substantially the ruling prayed for.

The whole estate is here taken, and the contract of leasing destroyed. *Dyer* v. *Wightman*, 66 Penn. State, 425. It was not so in *Edmands* v. *Boston*, 108 Mass. 535. There, only part of each tenement being taken, the leases were not destroyed; moreover, all that case says is, that the rulings were sufficiently favorable to the landlord. It is elementary law that a contract, *e. g.* a charter, may be taken by eminent domain and must be compensated for. Here, not only the land, but the contract, is taken, for the reversion is taken and the lease passes as incident. A man who leased his estate five years ago, on a long lease, for double what it would bring today, and to a solvent tenant, has something more valuable than the land and building; he has the land and building, and a valuable contract besides, and the whole is taken by the government. Any law which should forbid the jury to give full compensation for the whole — contract as well as land and building — would be unconstitutional; and the law un-

der which we are proceeding must be so construed as to make it constitutional, if possible.

The only just rule is that the landlord is to have the value of his rent and the reversion, and the tenant the value of his term subject to the rent, that is, each is to have the fair market value of what is taken from him, or in other words, the amount of the injury to him. Suppose, as is often the case, one owner has agreed with adjoining owners to supply steam, and all parties have built in conformity, and his estate is taken; is not he to be compensated for his contract? But this would be a weaker case than ours, for such a contract might not pass with the reversion. The case of *Edmands* v. *Boston,* expressly says, regard being had to its "manner of occupation." In *Brown* v. *Providence, Warren & Bristol Railroad,* 5 Gray, 35, evidence was admitted of the terms of the existing lease. The case of *Boston & Worcester Railroad* v. *Old Colony Railroad,* 12 Cush. 605, 611, is in our favor; the peculiar occupation of the owner there being something which would not pass to a purchaser, evidence that that occupation made the estate more valuable to him was excluded. But here the valuable lease would pass with the reversion. If the reversion alone had been taken, the United States would have had of course to pay its value, why should they pay less because they get the term too?

*E. Avery,* (*E. D. Sohier* with him,) for Avery & Harris.

GRAY, C. J. This is a proceeding for the assessment of damages to the owners of land appropriated to the use of the United States for the enlargement of the post office in Boston, in accordance with statutes duly passed by Congress, and by the legislature of the Commonwealth. U. S. St 1873, *c.* 227. St. 1873, *c.* 189. *Burt* v. *Merchants' Ins. Co.* 106 Mass. 356.

The rights of the government on the one hand, and of the owners of the land on the other, are secured by a provision in the act of Congress that no money appropriated for the purpose shall be expended until a valid title to the land shall be vested in the United States; and by provisions in the statute of Massachusetts that the title shall vest in the United States only upon payment of the amount of the assessment made by the jury and confirmed by the court, and that until such payment the United States shall **not enter into** or take possession of the land, or exercise **any act**

of ownership thereon. By the effect of these provisions, the final decision in the case fixes the time when the compensation shall be paid to the owners of the land, and the title shall vest in the United States. *Baltimore & Susquehanna Railroad* v. *Nesbit,* 10 How. 395.

But the compensation to be paid by the government and received by the owners of the land must be estimated according to the value of the land at the time of the filing of the petition. This affords a definite and invariable rule, which has relation to the time at which the property is designated and set apart for the public use, the owners ascertained who are entitled to be compensated, and the judicial proceedings instituted for the purpose of determining such compensation ; and is not liable to be affected by the duration of these proceedings, or by increase or diminution in value, whether occasioned by the taking itself, or by acts of the owners, lapse of time, or other circumstances. In all these respects, it is a juster measure of compensation than a valuation of the estate at any subsequent point of time. And it accords with the rule as settled in this Commonwealth in the analogous cases of lands taken for highways and railroads.

It is true that in those cases the right in the lands vests in the public upon the location of the way ; and that has been assigned in the later decisions as a sufficient reason for estimating the damages as of the time when the land is set apart for the public use. But it is not the only reason. In the leading case of *Parks* v. *Boston,* 15 Pick. 198, 208, which was a proceeding to assess damages for land taken for a highway, Chief Justice Shaw said : " It is not, strictly speaking, an action for damages ; but rather a valuation or appraisement of an incumbrance created on the plaintiff's estate, for the use of the public. It is the purchase of a public easement, the consideration for which is settled by such appraisement only because the parties are unable to agree upon it. The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And if a piepowder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other ; and this rule is departed from only because some time is necessary, by

the forms of law, to conduct the inquiry; and this delay must be compensated by interest."

It follows that the learned judge of the Superior Court erred in instructing the jury that the value of the land was to be estimated as of the time of the trial and verdict, and that for this reason the petitioner's exceptions must be sustained, and a new trial had.

One other question, fully argued at the bar, must arise again upon a new trial, and should therefore be now considered.

The St. of 1873, *c.* 189, § 2, provides that if any persons, other than the owner of the estate, shall appear and claim any interest therein, the value to the owner of the fee and to all persons interested in the estate shall be ascertained and apportioned in the same manner as is provided for the assessment of damages upon the taking of lands and buildings for highways in § 55 of *c.* 43 of the Gen. Sts. That section provides that the jury " shall first find and set forth in their verdict the total amount of the damages sustained by the owners of such land and buildings, estimating the same as an entire estate and as if the same were the sole property of one owner in fee simple; and they shall then apportion the total amount of damages among the several parties whom they find to be entitled, in proportion to their several interests and claims, and to the damages sustained by them respectively, and set forth such apportionment in their verdict." The situation of the estate and the manner of its occupation are doubtless to be taken into consideration in assessing the damages for taking the land and disturbing that occupation. But no contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole. *Edmands* v. *Boston*, 108 Mass. 535. *Penny* v. *Penny*, L. R. 5 Eq. 227.

But we are of opinion that the petitioner shows no just ground of exception to the instructions in this respect. The jury were clearly directed to ascertain in the first place the total amount of the value to the owners of the estate, estimating it as an entire estate as if it was the sole property of one owner in fee simple, regard being had to the situation of the estate and the manner of its occupation; and then divide that total value among the

owners of the fee and the lessees and sub-lessees. Some clauses in the charge to the jury, if taken by themselves, without relation to the rest of the charge, or to the evidence introduced and positions asserted at the trial, might seem to authorize the jury to assess the value of each interest separately, and return a verdict for the sum of such assessments, although it should exceed the value of the estate as a whole. But any possible misconstruction of particular passages is controlled by the context and by the distinct rules previously stated. It is to be observed also that the leases appear to have been given in evidence, not for the purpose of enhancing, but for that of lessening the value of the estate as a whole. So far as there is any obscurity in the bill of exceptions, it has been created by the irregularity, which cannot be too strongly disapproved, of setting out the charge at length, instead of merely stating the rulings upon points of law made at the trial. The remarks of Mr. Justice Story, delivering the judgment of the Supreme Court of the United States, in *Evans* v. *Eaton*, 7 Wheat. 356, 426, are peculiarly applicable : " The charge is spread *in extenso* upon the record, a practice which is unnecessary and inconvenient, and may give rise to minute criticisms and observations upon points incidentally introduced, for purposes of argument or illustration, and by no means essential to the merits of the cause. In causes of this nature we think the substance only of the charge is to be examined ; and if it appears, upon the whole, that the law was justly expounded to the jury, general expressions, which may need and would receive qualification, if they were the direct point in judgment, are to be understood in such restricted sense." See also, to the same effect, *Magniac* v. *Thompson*, 7 Pet. 348, 390.

The remaining questions discussed at the argument may take a new shape or become immaterial upon a new trial, and therefore require no further notice. But, for the error as to the time of which the valuation should be made, the

*Petitioner's exceptions are sustained.*