PROVIDENCE, FALL RIVER AND NEWPORT STEAMBOAT COM-
PANY *vs.* CITY OF FALL RIVER & another.

SAME *vs.* CITY OF FALL RIVER.

JOHN KEOGH *vs.* SAME.

SAME *vs.* SAME.

CHARLES F. BORDEN & another *vs.* SAME.

SAME *vs.* SAME.

Bristol.   October 25, 1904. — November 22, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Damages*, For property taken under statutory authority.   *Fall River.*   *Grade Cross-*
*ing Acts.*   *Way*, By prescription.   *Statute*, Construction.

St. 1900, c. 472, providing for the abolition of certain grade crossings in Fall River, did not on its passage transfer the title to the lands and rights in land appropriated thereunder to the public use, and the time of the taking from which interest is to be computed in assessing damages, on the petitions of the owners of such lands and rights, is the date of the filing of a plan and recording of a statement in the registry of deeds signed by the mayor of the city and the engineer of the railroad company.

Under St. 1900, c. 472, providing for the abolition of certain grade crossings in Fall River, interest on damages for the taking of lands and rights in land is to be computed from the time of the taking and not from the time of the subsequent entry on the land for making the authorized changes. R. L. c. 48, § 13, in regard to the assessment of damages from the relocation or alteration of a highway has no application.

After land of a railroad company has become a public highway by prescription an owner of adjoining land cannot acquire a private right of way by adverse use in travelling over it.

The requirement of the commissioners whose report was enacted as law by St. 1900, c. 472, providing for the abolition of certain grade crossings in Fall River, that the side walls of Central Street from Davol Street to Pond Street be raised by suitable masonry to a height of four feet above the grade of the street, was intended for the protection of travellers and not to cut off landowners from access to the street if they chose to construct passageways opening into it, and a ruling of an auditor that damages to adjoining land should be assessed as if

the owners upon request were to have openings made, where reasonable, in the north wall on Central Street, for access to their property, is correct.

In assessing damages to real estate in which there are leasehold interests and the reversion is owned by a corporation, taken for public purposes under a grade crossing act, the rule is to ascertain the total amount of damages sustained by the owners, "estimating the same as an entire estate and as if it were the sole property of one owner in fee simple," and then to apportion the damages among the several parties "entitled thereto, in proportion to their several interests and to the damages sustained by them, respectively," as provided in R. L. c. 48, § 22, in reference to proceedings under § 20 of that chapter.

In assessing damages to real estate taken for public purposes under a grade crossing act, if the petitioner is a mortgagor and the mortgagee waives his right to be heard, the petitioner as mortgagor is entitled to recover the damages.

SIX PETITIONS, filed July 16 and 17, 1901, and January 23, August 11 and December 11, 1902, for damages from changes required to abolish grade crossings in Fall River under St. 1900, c. 472, and the statutes referred to therein.

The cases were referred to Charles W. Clifford, Esquire, as auditor. He reported that the gross damage was $24,000, and apportioned $18,000 to the Providence, Fall River and Newport Steamboat Company, $4,000 to Keogh, and $2,000 to Borden and Remington, with interest in each case from January 1, 1902, the date of the taking. In the Superior Court *Bell*, J. refused to make various rulings requested in the form of exceptions and objections to the auditor's report, and ordered that the auditor's report be confirmed and that judgments be entered in accordance therewith. He reported the cases for determination by this court. If any rulings of the judge were erroneous, such judgments were to be entered and such disposition of the cases was to be made as this court might order; otherwise, judgments were to be entered as ordered by the judge.

*A. J. Jennings & J. M. Morton, Jr.*, for the Providence, Fall River and Newport Steamboat Company.

*E. Higginson, (J. W. Cummings* with him,) for Keogh.

*A. S. Phillips*, for Borden and Remington.

*H. A. Dubuque*, for the city of Fall River, (*F. S. Hall* with him, representing the Old Colony Railroad Company, joined as respondent in the first case.)

KNOWLTON, C. J. One of the most important questions in these cases arises in construing the St. of 1900, c. 472, which is an act providing for the abolition of grade crossings in Fall

River.   In *Providence, Fall River & Newport Steamboat Co.* v. *Fall River,* 183 Mass. 535, it was held that this was special legislation, adopting and establishing a particular scheme for a public improvement, which superseded the action of the court, and finally determined the details of the changes to be made in the interest of the general public.   The question now before us is whether the statute worked a change of the title to the rights and lands which were appropriated to the public use, or whether it required an additional proceeding as a preliminary to such a change.   Upon the theory of the petitioners the statute not only settled the rights of the public and of property owners as to what was to be done, but it was in law the taking of the title to such land as was appropriated and such private rights as were abridged or destroyed in the public interest, so that the time limiting the bringing of petitions for damages began to run, and the right to receive interest on the amount to be paid accrued, on the passage of the act.   It is argued correctly that the rights of the parties were not made subject to the discretion of the mayor and the engineer of the railroad company, which they could exercise by filing or refusing to file the plan and the statement of taking in the registry of deeds.   No doubt the rights of all parties became fixed so far as the final adoption of the scheme was concerned, as soon as the act was passed, and it then became the duty of the mayor and engineer to file, within a reasonable time, a plan and the statement of lands and rights taken.   This duty they could have been compelled to perform. But the statute contemplated the possibility, if not the desirability, of acquiring a part or all of the lands by purchase, and provided for such purchases.   This involved an implication that the title to land purchased would pass by the deed of conveyance, and not by a taking.   It was intended, therefore, that there should be an opportunity to attempt an acquisition of title by purchase before there was a taking, and, upon a failure in the attempt, that there should be a taking by the mayor and the engineer, which would work a change of title and fix the time from which the statute of limitations would begin to run and the right to receive interest would accrue.   While it might be possible to construe the statute in accordance with the petitioners' contention, we think it better to hold that the Legis-

lature did not intend to change the ownership of property by the enactment of the statute, without the subsequent action called for, which was to be a matter of record in the registry of deeds. If this is a correct construction of the statute as to the taking of the lands, the same construction should be given to that part of it which relates to the acquisition of rights in land, the general title to which is left in private owners.

The respondents' contention that interest is to be reckoned from the date of the entry upon the land to make the changes, instead of from the date of the taking, is not well founded. The reason for the provision of the R. L. c. 48, § 13, relied on by the respondents, is not applicable to the assessment under this statute, which statute in itself shows a final determination that the work shall be done, and under which no land of the petitioners was taken, but only certain rights in land. See *Hay* v. *Commonwealth,* 183 Mass. 294.

In regard to the discontinuance of Water Street, the contention of the first petitioner as stated in the report, is " that although its land did not abut on the discontinued portion of Water Street it had by open, adverse and uninterrupted user for more than twenty years acquired a private right of way over the land of the railroad company from its land to the discontinued portion of Water Street and that, therefore, the discontinuance of that street was a special damage to it." The finding of the auditor that the public had acquired a right of way by prescription in the land between Central Street and Water Street was well warranted, and after this land had become a public highway by the acquisition of such a right, the petitioner could not acquire a private right of way over it by adverse use in travelling along it. The ruling of the auditor upon this point was correct.

The requirement of the statute, following the report of the commissioners, was that the side walls of Central Street from Davol Street to Pond Street be raised with suitable masonry to a height of four feet above the grade of the street. This requirement was for the protection of travellers along the street from the danger of falling upon the adjacent land below. It was not intended to cut off landowners from access to the street if they chose to construct passageways opening into it.

*Warner* v. *Holyoke*, 112 Mass. 362.   The ruling of the auditor was correct, that damages were to be assessed " as if upon request of the petitioner or its tenants, they were to have openings made where reasonable in the north wall on Central Street for access to their property."   This sufficiently covered the contention of the respondents that they were " to have it removed altogether in case provisions were made by the abutter to make travel safe wherever his land is lower than the grade of Central Street." . This could be done if the land was so used as to make so complete an opening reasonable; otherwise it could not.   There was no ground for the respondents' contention that the walls were to stop short of Pond Street.   The report adopted by the statute is explicit in that particular, and is binding upon the parties.

The allowance of $600 for shoaling the water in the petitioner's dock, which was made to the lessees Borden and Remington, called for an increase of the entire damages, to the owner and the lessees, which were being assessed in the trial of the several cases together.   This allowance, having been made to the lessees, was deducted from the aggregate sum, and thus it diminished by so much the allowance to which the owner was fairly entitled.   This sum would have been added to the other allowance for the entire damages, except that the auditor understood the counsel of the owner to waive any claim to it. We are of opinion that a fair construction of the language of the counsel is that, as between the owners and the lessees, he did not care to claim it in the apportionment, and not that, if it was allowed to the lessees, he consented that it should be deducted from the damages to which his client was entitled.   We are of opinion that this sum should be added to the $24,000 allowed as the gross damages, thus relieving the owner from a deduction from the $24,000 on account of the loss of the lessees from shoaling the dock, and thereby increasing by $600 the amount allowed to the owner in the apportionment.   See *Manson* v. *Boston*, 163 Mass. 479.

The ruling that these proceedings are governed by R. L. c. 48, § 20, was correct.   Here was one estate with leasehold interests in certain parts of it, and the reversion in all of them owned by a single corporation.   The rule for the assessment of

damages in such cases is to ascertain the total amount of damages sustained by the owners, " estimating the same as an entire estate and as if it were the sole property of one owner in fee simple," and then to apportion the damages among the several parties " entitled thereto, in proportion to their several interests and to the damages sustained by them, respectively," as stated in R. L. c. 48, § 22, in reference to proceedings under § 20. *Edmands* v. *Boston*, 108 Mass. 535. *Boston* v. *Robbins*, 121 Mass. 453. *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1.

The Union Trust Company, holding a title as mortgagee under a trust deed, having waived its right to be heard, the petitioner as mortgagor was plainly entitled to recover the damages.

There was sufficient evidence to warrant an inference that the city had notice of the lease to Borden and Remington before the taking was filed. If there had been no lease, the damage to the whole property as it was at the time of the taking, including the buildings, would have been assessable.

The assignment of the lease from Keogh to one Brown was rightly held to be a mortgage, and, upon the disclaimer of the mortgagee, the damage rightly was awarded to Keogh.

The exceptions of the respondents which relate only to the apportionment of damages between the different petitioners are immaterial. Other exceptions that have not been argued, either orally or upon the respondents' brief, we do not consider. Under the report of the judge of the Superior Court, the auditor's report is to be confirmed, and judgment entered in accordance therewith, except that the total damages are to be increased by the sum of $600, and that sum is to be added to the amount allowed in the apportionment to the owner of the fee.

*So ordered.*