BENJAMIN F. EDMANDS & another *vs.* CITY OF BOSTON.

All persons having interests in land taken to widen a street in Boston under the St. of 1866,
c. 174, must join in the same proceedings for the assessment of damages.

Damages for the taking, to widen a street, of land leased to several tenants, are to be as-
sessed under the Gen. Sts. c. 43, § 55, as if the owner was the only person interested in
the land.

In estimating damages under the St. of 1866, c. 174, for taking part of a lot of land and
buildings thereon to widen a street in Boston, the injury to the rest of the land and
buildings is to be included.

At the trial of a petition to assess damages for land taken under the St. of 1866, c. 174, to
widen a street in Boston, if the judge does not direct the jury to assess them in the mode
required by that statute, the petitioner has, nevertheless, no ground of exception, if the
mode directed is in all respects as favorable to him.

At the trial of a petition to assess the damages of a landowner for the taking of a part of
his building to widen a street, he testified as to the size and inconvenience of his rooms
after it had been taken. *Held,* that he might be asked, on cross-examination, what rent
he was receiving from the building since the taking.

At the trial of a petition to assess damages for taking a brick store to widen a street, a
witness, called as an expert on the value of the land, testified on cross-examination, that
his dealing in real estate in the vicinity helped him to form an opinion, as it showed the
rise of property, and that he had bought and sold a wooden dwelling-house in the vicin-
ity. *Held,* that he might be asked, on the cross-examination, the price at which he
bought and at which he sold the house.

In assessing damages for the taking, to widen a street, of land which the owner has leased
to several tenants, the provisions of § 53 of the Gen. Sts. c. 43, are to be applied, and
not those of § 17.

One who is lessee of land at the time of the passage of an order to take it to widen a street
is entitled to damages, although his lease terminates before the actual taking.

At the trial of a petition to assess damages for the taking, to widen a street, of land which
the owner had leased to several tenants, the judge ruled that the amount to be appor-
tioned to each lessee, under the Gen. Sts. c. 43, § 55, out of the damages awarded, should
be the market value of his lease at the time of the passing of the order to take the land,
deducting the market value of the occupation which he actually enjoyed until the land
was entered on. *Held,* that the general owner of the land had no ground of excep-
tion.

In assessing damages for taking land to widen a street, injury to personal property, or to
the good will of the business of a lessee or other owner, is not to be considered.

Interest on damages assessed for taking land to widen a street should be allowed only from
the time of the actual entry on the land, and not from the time of the passing of the
order for taking it, in the absence of evidence that the owner has been put to trouble
and expense, or has incurred the loss of any advantage from the use of his land, by pro-
ceedings before the entry, which has not been considered in the damages.

PETITION by Benjamin F. Edmands and John J. Rayner to
the superior court, under the St. of 1866, c. 174,* for a jury to

* The parts of the St. of 1866, c. 174, material to the case, were as follows:

assess the damages occasioned by the taking of a portion of their land and of the four story brick building thereon, by the respondents, for the widening of Hanover Street. Trial at April term 1871, before *Devens*, J., who reported the following case for the determination of this court:

The order for taking the petitioners' land was passed December 31, 1868. At that time the building on the land was occupied by five tenants, each of whom held one room under a written lease terminating April 1, 1870, and by Jerome B. Judkins, who held the rest of the building under a written lease terminating April 1, 1875. All the leases contained covenants by the lessees, to repair, and against assigning or underletting. The part of the building taken by the respondents comprised portions of each of

---

" Section 1. The board of aldermen of the city of Boston shall continue to have full power and authority to lay out, widen, discontinue, change the grade of, or otherwise alter any street within said city, and for these purposes may take any land, and may remove the whole or part of any building which in their judgment it may be necessary to take and remove, and may assess upon the estates abutting on any street, which may be laid out, such portion of the expense of such laying out, widening, discontinuance, change of grade, or other alteration, including all damages sustained by any person or persons thereby, as is hereinafter provided; and their determination so to do shall be adjudicated in the same manner and upon like notice to parties interested, as is provided by law in other cases of laying out, widening, discontinuance, change of grade, or other alteration of streets.

" Section 2. In making an estimate of the expense for said purposes for which an assessment as herein provided is to be laid, all damages sustained by any person or persons shall be estimated, including damages for land and bu. l·ings taken, and including the value of the whole of the buildings on the land, any part of which shall be so taken, deducting therefrom, however, the value cf the materials to be removed, and of the buildings or parts of buildings, if any, which will remain standing; and in estimating the value of the land cut off for said purposes, the land so cut off shall be estimated at the value before the laying out, widening, discontinuance, change of grade, or other alteration, and such estimate shall not include the increased value occasioned merely by such laying out, widening, discontinuance, change of grade, or other alteration.

" Section 3. The damages, estimated according to the preceding section, shall be paid to the persons entitled thereto, in the same manner, and upon the same conditions, as is provided by law in other cases of laying out, widening, discontinuance, change of grade, or other alteration of streets."

the rooms leased. In February 1869 the respondents served upon the petitioners and their lessees notice to quit on May 1, 1869; but did not actually enter upon the land until April 21, 1870. All the lessees, except Judkins, occupied until the termination of their leases. Judkins removed; and, after the respondents had completed the widening, he returned and occupied that part of the premises leased to him which was not taken by them. The several lessees filed petitions against the respondents in the superior court for assessment of damages, and the respondents appeared thereto.

At January term 1870 of the superior court the present petition came on for trial, and the respondents contended that the trial could not proceed because the lessees had not been cited in. The petitioners contended that, the lessees having petitioned separately, the petitions should be consolidated and tried together; but the court ruled that the Gen. Sts. *c.* 43, §§ 53–55, required the lessees to be cited in, whereupon, by leave of court, the several lessees appeared and filed their claims. The case was then continued, and came on for trial at April term 1871, as aforesaid.

The lessees offered evidence of bonuses paid by them for their leases; " of the expenses of removing goods; of damages to signs, goods and other personal property occasioned by the removal; of loss of earnings during the time of removal; of loss of average earnings during the time their business was necessarily suspended in consequence of such removal; of the rent of other stores during the time of such necessary suspension of business, being less, as was contended, than the loss of average earnings during the time the business was necessarily suspended; and of loss of profits, of customers, and of good will injured or destroyed; " but the judge excluded this evidence, and the lessees alleged exceptions.

The lessees and the petitioners introduced much other evidence as to the damage incurred by them.

One of the petitioners, who was a witness in his own favor as an expert as to the value of the land only, but not of the building, testified, however, to the size and inconvenience of the rooms in the building as cut off. On this account, the respondents

asked him, on cross-examination, what rent he was now receiving for the entire estate. He objected to the question, on the ground that the present rent was after betterments, and also included rents paid by Judkins, under his lease, for portions of the building cut away, and because the evidence would be otherwise incompetent; but the judge allowed the question to be put. .

James W. Clapp testified as an expert, as to the value of the real estate in the market. " On cross-examination, he was asked about his opinion, and said that his dealings in real estate on the street and in the vicinity helped him to form a judgment, as it showed the rise of property; that he bought a wooden dwelling-house, with some other houses on a place leading out of Hanover Street, and sold it again. He was then asked what he gave for it, and what he sold it for. This estate was in the vicinity, and to some extent a criterion. The petitioners objected, as the estate did not appear similar or similarly situated, but the judge allowed the question to be put, it being on cross-examination, and the witness stated that he bought it for $6000 and sold it for $12,000."

The petitioners contended " that, in estimating the damages, regard should be had to all the damages done to the parties, whether by taking their property or injuring it in any manner, and that all such damages should be estimated and assessed, and nothing allowed, by way of set-off, for any benefit, if any, to the land remaining; that compensation should include every valuable interest which could be enjoyed as property and recognized as such; that it was not material whether the property was removed from the possession of the owner or in any respects changed hands; that if the property was taken from the owner, or if he was deprived of the possession or beneficial enjoyment of it, then it was appropriated to public use, and the owner was entitled to compensation; that the petitioners were entitled to receive as their portion of the damages, and to have included in the aggregate sum, if assessed in an entire sum, the value of their property and the amount of damages occasioned them; that the whole sum of damages, if to be assessed, determined and apportioned

under the Gen. Sts. *c*. 43, §§ 53–55,* was to be made up of the aggregate damages to which they and the lessees were entitled under the law ; that the lessees might be entitled to other damages which were occasioned by the taking, independent of their leasehold interest in the premises, if any, and that should not be included in the entire sum to be apportioned, unless the entire sum was to be increased accordingly ; that all damages occasioned to any of the parties could be assessed, but that the city was to pay them, and not the petitioners out of the amount al lowed them ; that, in determining their damages, the jury were to estimate all the damages, the value of the land taken, the value of the whole buildings upon the entire estate, deducting the value of that portion which remained after the taking, and to allow damages to the remaining buildings, and their loss in rents, or in being deprived of the enjoyment of the same during the time reasonably necessary to do the widening and the work by the city, and in putting the property in proper condition or repair for use afterwards."

---

* " SECTION 53. When there shall be several parties having several estates at the same time, in land or buildings, other than and different from the estates and interests for which provision is made in section seventeen, and the land or buildings are taken or otherwise damaged, in whole or in part, by the laying out, locating anew, altering, or discontinuing, of a highway, or making specific repairs thereon, and one of such parties, by petition as provided in this chapter, applies for a jury to ascertain his damages in the premises, all the other parties so interested may become parties to the proceedings under such petition, and the damages of all of them may be determined by the same jury, in the manner provided in the five following sections."

" SECTION 55. If on such hearing the jury find any of the parties entitled to damages, they shall assess the same in the following manner, to wit: they shall first find and set forth in their verdict the total amount of the damages sustained by the owners of such land and buildings, estimating the same as an entire estate and as if the same were the sole property of one owner in fee simple ; and they shall then apportion the total amount of damages among the several parties whom they find to be entitled, in proportion to their several interests and claims and to the damages sustained by them respectively, and set forth such apportionment in their verdict ; and if they find any one or more of said parties not to have sustained damage, they shall set forth in their verdict that they award no damages to such party."

The judge instructed the jury that they should find for the petitioners " the damages to the entire estate taken, land and buildings, as if it were owned by them in fee simple, and not incumbered by any lease, but that no deduction was to be made for any benefit done to what was left; " that they should find a verdict in the alternative, first, " what was the fair market value of the estate taken, supposing the petitioners had, at the time of taking, an unincumbered estate in fee simple in the land, together with the injury which was caused by such taking to such portion of the estate as was left after the taking; " and secondly, that they should " assess the damages for the entire estate, as if it were a fee simple, adding nothing thereto for damages to the remaining part; " that all the lessees, including those whose leases expired on April 1, 1870, were entitled to share in the damages awarded; that the Gen. Sts. *c.* 43, § 17,* did not apply, and that § 55 did; " that the rule by which the whole damages for the taking of the land and buildings were to be ascertained was, to ascertain what was their fair market value on the day of taking; that if the formal taking had been accompanied by an actual taking, and the lessees ousted at once, all that they could have received would have been the fair market value of their leases, and this was the highest sum which they could in any event recover; that what the lessees were to receive was to come from

---

* " When persons having a claim for damages sustained in their property by the laying out, alteration, or discontinuance of a highway, have different or separate interests in the property, so that an estate for life or for a term of years in the same belongs to one person, and the remainder or reversion in fee belongs to another, entire damages, or an entire sum as indemnity, shall be assessed in the same manner as is provided in other cases, without any apportionment thereof; and the amount of such damages or indemnity shall be paid over to or be recoverable by any person whom the parties owning the several interests may appoint, to be invested by him, when paid over or recovered, in bond, mortgage, or other good securities, and held in trust for the benefit of the parties according to their several interests; the annual income to be paid over to the person in whom was the estate for life or term of years, for the period such estate might have continued, and the remainder after the termination of such estate to be paid over absolutely to the person that was entitled to the reversion in fee, or to his heirs or devisees."

the sum which was first decided to be the fair market value of the who.e estate, and the rule should be the same for them that was applied to the general owners ; that they could not recover for loss of profits, loss of customers and good will, and inconvenience in removing, in addition to the fair market value of the leases ; " that " the jury should deduct, from the fair market value of the leases on the day of the formal taking, the fair market value of the occupation of the premises, which the lessees actually enjoyed, disturbed as it was by the liability to be actually entered upon, and should apportion to each of them the balance, if any, left after such deduction ; that the same principles applied to the case of Judkins as to the cases of the other lessees ; that it should first be determined what was the fair market value of his lease for the unexpired portion of his term at the time of the formal taking, and from this should be deducted, first, what was the fair market value of the occupation which he enjoyed of his premises, until the actual entry, and secondly, what was the fair market value of his premises (diminished in size by the cutting) from the time he occupied to the end of his lease ; that, if he received any added market value from the widening of the street, this should be included in the market value of the diminished premises, as the general owners, who paid the betterments, should have the benefit of this added value ; that they were to determine what was the fair market value of the estate of each of the lessees, that is, what it was worth as a fair matter of bargain and sale, suppose it to be sold, and then were to make the deductions on the principle already stated ; but that by a fair market value of a lease was not meant the bonus for which the lease could be sold, if that bonus included good will, because that was not to be included as against the city."

" The question of interest was, by agreement of the parties, left for the determination of the court and for computation after the verdict, the jury being instructed to find the damages as of the date of the formal paper taking, December 31, 1868, and the judge reported the question of what interest should be cast thereon, for this court."

The jury assessed damages for injury to the entire estate, including the injury to the remaining land and buildings, at $68,-825.83 ; and not including such injury, at $55,725.83 ; and of this they apportioned to Judkins the sum of $19,185.21, and to the other five tenants sums amounting in all to $7262.51.

*A. A. Ranney*, for the petitioners.   The questions excepted to by the petitioners should not have been put.   The leases, being demises of separate rooms only, were terminated by the taking by the respondents.   *Stockwell* v. *Hunter*, 11 Met. 448.   The damages must be an adequate compensation for the property taken, and property includes every species of valuable right and interest which can be enjoyed.   *Ellis* v. *Welch*, 6 Mass. 246.   *Old Colony & Fall River Railroad Co.* v. *County of Plymouth*, 14 Gray, 155.   *Boston & Lowell Railroad Co.* v. *Salem & Lowell Railroad Co.* 2 Gray, 1, 35.   *Parks* v. *Boston*, 15 Pick. 198.   *Patterson* v. *Boston*, 20 Pick. 159; *S. C.* 23 Pick. 425.   *Commonwealth* v. *Coombs*, 2 Mass. 489.   *Brown* v. *Worcester*, 13 Gray, 31.   *Jubb* v. *Hull Dock Co.* 9 Q. B. 443.   *First Church in Boston* v. *Boston*, 14 Gray, 214.   Gen. Sts. *c.* 43, §§ 14, 16.   St. of 1866, *c.* 174, §§ 2, 3.   Interest in regard to the good will of a business, the hope of a beneficial renewal, tenants' fixtures, improvements and the like, are valuable property, and within the protection of the Constitution and statutes.   The Gen. Sts. *c.* 43, § 17, do not apply to this case.   The provision in the Gen. Sts. *c.* 43, § 55, that the verdict shall set forth " the total amount of the damages sustained by the owners of such land and buildings, estimating the same as an entire estate, and as if the same were the sole property of one owner in fee simple," is not intended to fix the limit of damages, but to prescribe modes of assessment ; it means that one sum shall embrace the aggregate of all damages, and that these damages shall include the injury done to the remaining land and buildings, and also special damages suffered by the general owners and lessees ; if the statute does not incl.ide these, then it is unconstitutional ; or if it is to be confined to estimating the value of the real estate alone, the tenants should have such a proportion of the damages as their leasehold estates bear to the reversion.

Under the instructions given, the Gen. Sts. *c.* 43, § 55, were construed to exclude any peculiar or exclusive damage, and the amount apportioned to the lessees was not determined by the proportions that their leasehold estates bore to the reversion, but the petitioners were compelled to pay to their lessees, out of the damages awarded, the damages which the lessees suffered in the diminished market value of their leases, and of their occupation to the end of their terms, estimated irrespectively of the restriction against assigning or underletting, without being reimbursed it in the entire damages allowed, thus making them pay to their tenants what the public ought to have paid. Had the leases been longer, the amount apportioned to the lessees would have absorbed the whole amount of the verdict. The market value was not the true test, and the judge did not direct the damages to be assessed as required by the St. of 1866, *c.* 174. The amounts awarded to the lessees, especially to Judkins, were excessive.

*A. B. Coffin*, for Judkins.

*T. L. Wakefield, S. J. Thomas, J. S. Abbott, & F. Woodside*, respectively, for other tenants.

*J. P. Healy*, for the respondents.

WELLS, J. The property, for which these damages have been assessed, was taken by the city under the St. of 1866, *c.* 174. The damages recoverable are defined by § 2 of that statute. By § 3, it is provided that such damages shall be paid to the persons entitled thereto in the same manner and upon the same conditions as is provided by law in other cases of laying out and altering streets.

By the Gen. Sts. *c.* 43, § 81, the provisions of the foregoing sections of that chapter are made applicable. The several parties having interests in the land at the time it was taken were therefore properly required to join in the same proceedings, for the purpose of having the gross damages apportioned between them according to §§ 53 *& seq.*

The case is necessarily complicated, and the questions raised at the trial present a variety of aspects, according to the several interests in reference to which they are considered. But as all parties except the original petitioners, who are the general own-

ers, are content that the verdict as rendered shall stand, we need not examine minutely any questions except those which are raised and presented by them, and by the decision of which, in the court below, they may be supposed to have been affected unfavorably.

The case on the part of the general owners presents two sides: 1st, that of the rule by which gross damages are to be assessed; 2d, that of the apportionment.

As to the first, we think it clear that the rule must be precisely the same as if they were the only party interested in the damages. The statute, § 55, distinctly requires it to be so; and we do not see that any essential principle of right is violated thereby. The situation of the estate and the manner of its occupation are doubtless to be taken into consideration in estimating the injury caused by disturbing that occupation. But between the public and the landowner it is but one estate. The public right is exercised upon the land itself, without regard to subdivisions of interest by which the subject is affected through the various contracts of individual owners. The public cannot be expected to forego its right to take property for public uses because the exercise of that right will defeat private contracts; nor is it reasonable that losses arising from the failure of such contracts, which otherwise might furnish grounds of damage between the individual parties, should measure the compensation to be rendered for the property so taken. Such a rule would seriously impair the public right. A fair compensation for the property taken and injury done, ascertained by general rules, is a substitute to the owners for that of which they are deprived. That is the whole of the transaction with which the public is concerned. The apportionment is merely a setting out to the several owners of partial interests of their corresponding rights in the fund which has been substituted for the property taken.

The jury, by direction of the court, have returned a certain sum as damages, including with the fair market value of the estate taken "the injury which was caused by such taking to that portion of the estate which was left after the taking;" and also another sum for the value of the land taken and of the part of the building which was upon it, but not including the injury to the remaining part of the buildings or land.

The respondent contends that the latter sum is the true assessment for which the verdict is to be accepted and judgment rendered, insisting that the damage to the remaining land and buildings is to be taken into account in the estimate of benefit and advantage which is afterward to be made. But the statute makes no provision for such an allowance. The estimate of benefits is special, having reference to the estates in their condition and their relation to the street after it is laid out or altered. On the other hand, the provision for assessing damages clearly embraces injuries to what is left. The language is, " all damages sustained," " including damages for land and buildings taken, and including the value of the whole of the buildings on the land, any part of which shall be so taken, deducting therefrom, however, the value of the materials to be removed, and of the buildings, or parts of buildings, if any, which will remain standing." " Damages for land taken," implies not merely the value of so much land, separately from its connection with the whole lot, but the injury or loss to the whole estate caused by taking from it the part which is so appropriated. *Presbrey* v. *Old Colony & Newport Railroad Co.* 103 Mass. 1. The verdict for the larger sum must be accepted, if either.

The instructions, under which this verdict was rendered, do not in terms conform to the provisions of the statute. The respondent however does not, as we understand, raise any objection to the verdict on this ground. The only question is, then, whether the terms adopted by the court were equally favorable to the petitioners with those contained in the statute.

The petitioners insist that the instructions were wrong in not conforming to the statute. But they do not point out any particular in respect of which the instructions restricted their rights, or bore unfavorably upon them ; and we do not discover any. The value of that which was taken, together with injury thereby caused to the remainder, which was the rule given by the court, must embrace all damages which the petitioners sustained as landowners. The injury caused to that which remained measures and is measured by its depreciation in value. As to land, that depreciation, added to the value of what was taken, makes

up the "damages for land taken," and we do not see in what respect, if any, the result can differ, in whichever mode it is stated. As to buildings, the statute provides for ascertaining the depreciation by deducting "the value of the materials to be removed, and of the buildings or parts of buildings, if any, which will remain standing," from the "value of the whole of the buildings" as they were before. This process, if followed, would comprehend damages of every description, so far as the buildings are concerned. It was the right of the parties to have this mode of estimating the damages adhered to. But the respondent takes no exception to the departure from it, as allowed by the court below; and the petitioners manifestly preferred and acted upon a less restricted method of proving their damages. Having done so, and obtained whatever of advantage there might be gained by other methods, they cannot now object to instructions, the only fault of which is that they permitted the application of the methods adopted by them as well as that prescribed by the statute. The rule contained in those instructions will admit of the method pointed out by the statute, as one of the means of ascertaining the damages sustained ; and we do not find from the report that the petitioners were prevented, by any ruling of the court below, from introducing any evidence or relying upon any proposition in relation thereto, which would have been admissible and competent if the investigation had been confined to the mode defined by the statute.

The petitioners except to certain rulings made during the trial.

1. The question to one of the petitioners in cross-examination, as to the amount of rent they were now receiving, was properly allowed to be put, to meet the testimony he had given as to the size and inconvenience of the rooms in the building cut off. It does not appear that any other use was made of his answer.

2. The testimony of Clapp as to the price at which he bought and sold another estate in the vicinity, he having previously given opinions as an expert, might be admissible in cross-examination, at the discretion of the judge. *Brown* v. *Worcester*, 13 Gray, 31. And as the judge reports that it was "to some extent a criterion," and nothing appears to the contrary, the presumptions are in favor

of its competency as affirmative testimony. *Boston & Worcester Railroad Co.* v. *Old Colony & Fall River Railroad Co.* 3 Allen, 142. *Presbrey* v. *Old Colony & Newport Railroad Co.* 103 Mass. 1. *Benham* v. *Dunbar*, Ib. 365.

In regard to the apportionment, the questions raised are important only as between the several petitioners; and we have to consider those objections only which were made at the trial by the general owners of the estate.

We are satisfied that § 17 of the Gen. Sts. c. 43, is not applicable to estates like those in the present case. That statute is adapted to cases only in which the relation of tenant for life or years and remainder-man exists without modification by contract between the parties or otherwise.

We are also satisfied that the court rightly refused to allow the cases to be presented as separate petitions upon which separate verdicts and judgments should be rendered.

It is contended that lessees, whose terms expired before the city entered upon the land for the purpose of constructing the street, never became entitled to any damages, and therefore cannot share in the apportionment. The apparent force of this suggestion is due mainly to the time when the trial took place. It was in fact after the leases, except that of Judkins, had expired; and after the city had constructed the new street, and the changes and repairs required by cutting off a part of the buildings had been made. It was impossible to avoid more or less reference to the state of facts as they had transpired and as they then existed. But, in theory, the assessment is made as of the time when the final order is adopted appropriating a part of the land to the public use. It is an estimate of prospective damage, losses and expenses to which the parties interested in the property are made subject by the order of appropriation. The public right then attaches upon which are based all subsequent acts, whether of construction or of perpetual maintenance, improvement and use. Compensation is rendered once for all. It is to be estimated according to the full measure of the right acquired by the public, and not merely according to the mode and time of the exercise of that right in the first instance. *Ham* v. *Salem*, 100 Mass. 350. *Presbrey* v. *Old Colony & Newport Railroad Co.* 103 Mass. 1.

The provision adopted in 1842, that the damages shall not be paid until the land is actually entered upon, does not require nor authorize any change in the mode of estimating the damages, and does not contemplate that the estimate will be delayed until such entry. On the contrary, it is required that the estimate shall be made and stated in the return of the location. Gen. Sts. c. 43, § 14. The assessment by a jury takes the place of the estimate of the board by which the original location and estimate are made. If by reason of delay in the exercise, or of a partial exercise only, of the rights appropriated to the public, the burden prove less onerous than was anticipated, the landowners gain that advantage, according to the nature and extent of their respective interests. It is only when no entry is made upon the land over which the way or alteration is located, and the county, city or town is discharged from its obligation to make compensation as estimated, by abandoning the rights appropriated by the location, that the respective parties are remitted to an allowance for trouble and expense to which they have been put by the proceedings. *Drury* v. *Boston*, 101 Mass. 439.

It is contended that the leases of separate rooms were defeated, and the interests of the lessees terminated by the taking of part of the land upon which the buildings stood. But they were not so treated by the parties at the time, nor at the trial. If it were so, it would only enlarge the damages of the lessees. It would not change the mode of their recovery. The ruling of the court below upon this question of the rights of the lessees was entirely correct.

The instructions under which the amount or proportion of the damages due to the several lessees was ascertained, if not in all respects accurate, were at least sufficiently favorable to the general owner. All doubtful elements of damage were excluded. From the fair market value of their leases, on the day of the formal taking, the jury were directed to deduct " the fair market value of the occupation of the premises, which they actually enjoyed, disturbed as it was by the liability to be actually entered upon; " and to apportion to each " the balance, if any, left after such deduction." By this rule, the lessees had not the deprecia-

tion in the value of their respective leases estimated according to market value at the time of the formal taking, but only the actual loss, estimated in view of the fact that (with the exception of Judkins) they had enjoyed full and undisturbed possession to the end of their respective terms. Whatever of advantage there was from the delay in entering upon the land would thus enure in the apportionment to the benefit of the general owner. The same is true in regard to Judkins, whose lease extended for a longer period.

It was rightly held that damages were not to be assessed for losses in respect of personal property.

Fixtures are a part of the realty, so long as they remain fixtures ; and damages are recoverable if they are destroyed or injured in value. But we do not find from the report that due allowance for all injuries of that nature was not made.

" Good will " of the business of a lessee or other owner is not property for which damages can be included ; and is to be considered only so far as it tends to enhance the market value of the estate that is injured.

The loss of rents by the general owner, and of the enjoyment of the remaining estate for the time reasonably necessary for widening the street and repairing the buildings injured by the alteration, are doubtless elements in the estimate of damages. But they are elements only which enter into the estimate of damages for the injury caused to the portion of the estate remaining after the taking. Or if the estimate is made in the mode indicated by the statute, these elements are necessarily taken into consideration in some form in determining the value of the buildings and parts of buildings which remain standing. There is nothing in the report to show that the petitioners were restricted in this regard, either as to their evidence or by the instructions.

It may be, as the counsel for the general owners argues, that the sum of the fair market value of all the leases, valued separately, exceeds what would be a fair market value of the whole, taken as one estate. But it does not follow that it is unjust, as between them and the public, that damages to their entire estate

should be assessed according to its value and the injury to it as an entire estate ; or, as between them and their tenants, that the apportionment should be upon the same basis as the contracts upon which the several leases were made. We do not think the statute can be impeached on this ground, nor an assessment and apportionment set aside which conform to its provisions.

The report contains an extended statement of the kind of evidence introduced, and of claims made by the several parties at the trial ; but we do not find any questions of law raised thereon by rulings unfavorable to the general owners, except such as we have adverted to.

The general owners complain that the allowances to the lessees are disproportionate and excessive, especially that to Judkins. It does not appear how or by whom the repairs or reconstruction rendered necessary were made ; but by the terms of his lease Judkins was bound to keep the premises leased to him in repair ; and we may presume that the expense of such repair was included in his verdict, and also the injury to such fixtures as belonged to him. But in regard to all the lessees, the conclusive answer to this objection is, that the case was submitted to the jury with sufficient restrictions as to the grounds upon which their claims were to be estimated; and if the jury have disregarded those restrictions, or rendered verdicts not properly supported by the evidence, the remedy is to be sought from the judge who presided at the trial. This court has no means of determining the matter, and it is not within its province to do so.

The question of interest upon the amount of damages, estimated " as of the date of the formal paper taking," is reserved for our determination. In *Parks* v. *Boston*, 15 Pick. 198, interest upon the value of the land at the time it was taken was held to be recoverable from that time. The decision was put upon the ground that the taking is the purchase of a public easement, and that the consideration is due, as in other purchases, at the moment the purchase is made, and ought then to be paid ; but delay being necessary for the purpose of ascertaining the proper amount of the consideration, interest in the mean time is a suitable compensation therefor. In *Whitman* v. *Boston & Maine*

*Railroad,* 7 Allen, 313, interest was allowed, upon substantially the same grounds, from the date of location ; that being the time, as the court also remarks, " after which the petitioners could no longer derive any advantage from the possession or use " of the land.

In regard to streets and other public ways, it is now provided that the damages, whenever estimated, shall not be paid until the land has been entered upon and possession taken for the purpose of constructing the street or way. Gen. Sts. *c.* 43, § 14.

No provision is made for compensation for the delay of payment, nor for the trouble and expense occasioned, in the mean time, by the incipient appropriation of the land to public use, in case the street or way is finally constructed. It was probably considered by the legislature that, in ordinary cases, the use of the land would compensate the owner sufficiently for the delay of payment. If so, the analogy to the general rule may still properly be applied, allowing interest from the time the money became due and ought to have been paid, to wit, from the time of entry.

If, however, the petitioner has been put to trouble and expense by the proceedings previous to the entry ; or if he has been unable, by reason of those proceedings, to derive any advantage from the possession or use of the land, it may be competent for the jury to compensate him therefor in some form, either by interest or other reasonable allowance embraced in their general verdict. *Presbrey* v. *Old Colony & Newport Railroad Co.* 103 Mass. 1.

When no such facts appear, we think the general rule should allow the petitioner interest only from the time of entry upon the land, when the damages first become payable. In this case the trouble and expense, the inconvenience and loss to the several petitioners in the enjoyment of their respective interests in the estate pending the proceedings and before actual entry, were fully presented for the consideration of the jury in estimating their damages. We have no reason to suppose that due weight was not given to those considerations by the jury in their verdict. It would be unjust to the respondent to add interest to the verdict

or to set it aside on the assumption that it was not so. Interest upon the amounts awarded to the petitioners respectively is to be computed from the time of entering upon the land, to wit, April 21, 1870, and added to the verdict.

*Verdict accepted and judgment accordingly.*