CORNELL-ANDREWS SMELTING COMPANY *vs.* BOSTON AND PROVIDENCE RAILROAD CORPORATION.

Bristol.   October 24, 1910. — February 27, 1911.*

Present: HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Damages,* For property taken or injured under statutory authority.   *Grade Crossing. Eminent Domain. Landlord and Tenant,* Option to renew lease.   *Contract,* What constitutes.   *Practice, Civil,* Petition for damages caused by abolition of grade crossing.   *Fixtures. Evidence,* Relevancy and materiality.

Review by LORING, J., of the decisions of this court and of the statutes relating to the awarding of damages for the taking of land or interests therein by an act of eminent domain, where at the time of such act several persons have several estates or interests in the property taken or damaged.

The decision in *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 202 Mass. 585, that, in assessing damages suffered by a lessee of real estate by the abolition of a grade crossing of a railroad with a way, a provision in the lease giving to the lessee a right at any time during its term of ten years to purchase the premises leased at their fair value should not be taken into consideration either to enhance or to diminish the lessee's claim, affirmed.

An option, giving to the lessee of real estate a right at his election to buy the fee at any time during the term of the lease, although it adds to the value of the lessee's rights under the lease, is no part of the lessee's estate in the land, but is merely a contract right.

Where, under a provision of a certain lease of land, the lessee is given an option at any time during the term of the lease to buy from the lessor the fee in the land, and during the term the land is taken by an act of eminent domain by a railroad corporation in the abolition of a grade crossing, although at the trial of a petition by the lessee for the assessment of his damages the provision in the lease regarding the option cannot be considered, nevertheless *it seems* that he is not remediless, because, while he no longer at his election can buy the land, he can at his election buy the fund into which in equity the land has been converted by the exercise of the power of eminent domain.

Where the owner of a large tract of land leases a portion of it to one who, upon the portion so leased being damaged by an act of eminent domain by a railroad company in the abolition of a grade crossing, files a petition for the assessment of his damages, and under the provisions of R. L. c. 48, § 21 ; c. 111, § 153, the lessor is ordered to intervene, the lessor should not include in his intervening petition damage to any other land than that described in the petition of the lessee.

If the owner of a tract of land, a part of which is subject to a lease, upon the land being damaged by acts of eminent domain by a railroad corporation in the aboli-

---

* The opinion in this case was withdrawn on an application for a rehearing.   The application was granted and new briefs were submitted.   The decision was not changed, and on June 20, 1911, the opinion was returned to the Reporter.

tion of a grade crossing, files a petition for the assessment of his damages as to his entire tract including that subject to the lease, and the lessee also files a petition for the assessment of his damages, and the court under the provisions of R. L. c. 48, § 21 ; c. 111, § 153, orders the lessor in the proceedings instituted by the lessee to file an intervening petition for the assessment of the damages he had suffered with regard to the land subject to the lease, the making of such an order brings to an end the lessor's right to proceed under the petition he already had filed so far as his interest in the land subject to the lease is concerned.

Where the owner of certain land and one to whom he has leased a portion of it, upon the land's being damaged by acts of eminent domain of a railroad corporation in the abolition of a grade crossing of the railroad with a private way, severally file petitions against the railroad corporation for the assessment of their damages and, the petitions being tried together and verdicts rendered for the petitioners, a motion of the respondent to set aside the verdict rendered for the lessor is filed but not acted upon, and exceptions by the respondent in the action of the lessee against it are sustained and a new trial ordered, there should be no new trial of the petition of the lessee until it is determined whether there is to be a new trial of the petition of the lessor, because the jury should be in a position to ascertain first and set forth in their verdict the entire damage to the property as if it were owned by one person in fee, and then to apportion such entire damage between the lessor and the lessee.

Statement, by LORING, J., of the proper procedure where leased land, on which buildings containing fixed machinery have been erected by the lessee, has been taken or damaged by the exercise of the power of eminent domain and petitions have been brought by the lessor and the lessee to have their damages assessed.

Upon a review of the record of a former trial, with petitions by the lessor, of this petition by a lessee of real estate to recover damages due to the abolition of a grade crossing of the defendant railroad corporation with a private way and the consequent extinguishment of another private way which had furnished the only means of access to a factory containing fixed machinery, erected upon the leased land by the petitioner, and of the opinion of this court, reported in *Cornell–Andrews Smelting Co.* v. *Boston & Providence Railroad*, 202 Mass. 585, stating their decision sustaining exceptions taken by the respondent at that trial, it was *held*, that the lessor's share of the damage done to the buildings and fixed machinery must be taken to have been included in verdicts rendered on the lessor's petitions, which had not been set aside, and that the lessee did not have any right to proceed at a subsequent trial of his petition on the basis that such damages belonged wholly to him and were to be recovered under his petition.

In a petition by a manufacturing corporation, which carried on its operations in buildings which it had erected and occupied with fixed machinery upon land which it held under lease, for damages suffered by it from acts of eminent domain of a railroad corporation in the abolition of a grade crossing, the lessor was ordered to file an intervening petition for such damages as he had suffered, and this court *held*, that, upon the filing of such an intervening petition and the trial together of the petition and the intervening petition, the jury must determine first and set forth in their verdict the entire damage done to the real estate leased, including as part thereof the buildings and the fixed machinery put in them by the lessee, that the amount of such entire damage then must be apportioned between the lessor and the lessee, and, if the lessee had suffered any special damage during the acts of abolition of the crossing, or if his damage in the matter of access to his manufactory was different from that of the lessor,

that the amounts of such damage should be found and set forth in the verdict specially in addition to the sums previously mentioned; and that, as to the lessor's entire share of the damage to the real estate, there should be a separation of so much thereof as represents his share of the damage done to the buildings and fixed machinery from what represents his share of the damage done to the land, in order that the lessee may exercise his right of removing trade fixtures, which right, after the acts of eminent domain, covers the buildings and fixed machinery and the damage done to them, including the lessor's share of that damage.

At the trial of a petition against a railroad corporation for the assessment of damages caused to the petitioner by acts of eminent domain of the respondent in the abolition of a grade crossing of the railroad with a private way, which acts resulted in the extinguishment of another private way, which formerly had been the only means of access to the petitioner's land upon which he had a manufacturing establishment, and in the erecting of a high embankment along the side of the manufactory, the trial judge admitted evidence offered by the respondent and tending to show that at a comparatively small expense a way from the petitioner's land could have been constructed connecting the land with a new street, which had been constructed as part of the acts in abolition of the crossing, and that the value of the land covered by such new way would have been small. In his charge the judge instructed the jury that, although he could not say that the petitioner was bound or was not bound to attempt to procure such a way, yet if the jury were satisfied that the possibility of his doing so would have affected the market value of the land after the extinguishment of the private way, they could take that into account. *Held*, that, as guarded by the instructions to the jury, the evidence properly was admitted.

LORING, J. At the trial consequent upon the decision of this court in *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 202 Mass. 585, the respondent asked for a ruling in the words used by us in describing the rules of law by which the new trial then ordered was to be governed. This the presiding judge * refused to give without modification, and the respondent took an exception. The questions of law involved in this ruling were not discussed in the former opinion. In view of that and of the earnest argument made by the learned counsel for the petitioner we have considered the matter anew.

The second trial was had on the lessee's petition against the railroad. The ruling requested by the respondent was in these words : " The value of the lessee's option of purchase, provided for in the lease, can neither enhance nor diminish the petitioner's claim, as damages are assessed for injury to its interest as of the date of the taking." This was the eighth ruling asked for by

* *Stevens,* J.

the respondent. Coupled with it was the respondent's fourteenth request for a ruling in these words. " The jury are not to assess total damages to the land leased and the buildings and fixed machinery therein to this petition, but are limited to damages for the remainder of the term, which is approximately six years. The jury are to consider that all damages to the leasehold property beyond the six-year term, if any, have been or will be recovered by the lessor." The judge refused the fourteenth and gave the eighth, " with the addition ' except so far as it may add to the value of the leasehold interest.' " He told the jury that they were first to determine " the fair market value of the leasehold interest which this petitioner had in that property, including, of course, the improvements made upon it, including any additional value that may have been given to it, if there was an additional value on account of the option, on account of the privilege of buying it at the end of ten years if it saw fit to do so," and then to decide how much that value of the leasehold interest had been impaired by the order for splitting grades which cut off access to Maple Street and put the factory under the new embankment which was twenty-seven feet high at the easterly end of the petitioner's premises and twenty-one feet at the westerly end of them.

Our former decision went on the footing that the damage done to the lessor's reversionary interest (1) in the land leased to the petitioner and (2) in the buildings and machinery put on the land by the lessee at its expense, had been finally disposed of by the separate verdicts which the lessor had recovered, or at any rate by those verdicts coupled with a statement of the petitioner's counsel made in argument before this court and acceded to by the respondent's counsel. We shall have to deal later on with this statement and concession. In other words the former opinion went on the footing that, although originally the damage done in the case at bar had been done to land owned in part by a lessor and in part by a lessee (whereby a case within R. L. c. 48, §§ 20-23, was presented), yet when this case was sent back for a new trial by the decision in 202 Mass. 585, the amount due to the lessee was the only matter left to be determined, as was the case in *Pegler* v. *Hyde Park*, 176 Mass. 101. But although it was then assumed that the only matter left to be

determined was the amount due to the lessee, the question whether the judge was or was not right in telling the jury in the case at bar that they could consider the option of purchase given in the lease to the lessee in determining the value of its leasehold interest depends upon the principles upon which compensation is to be made when land taken or damaged by the exercise of the power of eminent domain is owned by a lessor and lessee.

There is no better way of arriving at a full understanding of that question than by starting at the beginning and following down the course of our decisions and of the statutes enacted by the Legislature. There is the more reason for doing that here because in the case at bar the proceedings have not been kept in the channel prescribed by these enactments of the Legislature.

It was held in *Ellis* v. *Welch*, 6 Mass. 246, that "any person having an interest in the land [taken for a public way], either as lessee for years, tenant for life, or for any greater estate of freehold, as also he in reversion or remainder, is an owner within" St. 1786, c. 67, § 1, giving to the owner of land taken for a highway compensation for damage thereby done. To have the damage done to the tenant in such a case determined by one jury and that done to the reversioner determined by another manifestly led or was likely to lead to results which varied when they should have been the same, even in the simplest of cases, for example, in case of a farm in the country. But there are cases where the miscarriage of justice likely to result is still greater if the damage done to the tenant or tenants and that done to the landlord are determined in separate actions. Take the case put by the Commissioners of the Revised Statutes, where there are " a number of tenants for different terms of years, on conditions creating very different rights and liabilities and exposing them to different degrees of injury." Commissioners' Report, 153. Or take as an example the case presented in *Patterson* v. *Boston*, 23 Pick. 425, where the front wall of a building fronting on Hanover Street in the city of Boston and let out in parts to several tenants was taken down in widening that street and never replaced.

To remedy these evils the Commissioners of the Revised Statutes suggested that " whenever there shall be several parties

having several estates or interests at the same time in any land or any buildings standing thereon " taken for a public way, any one of such parties may on application cause " all the other parties " interested to " become parties to the proceedings." And in such a case the jury " shall first find, and shall set forth in their verdict, the total amount of the damages sustained by the owners of such land and buildings, estimating the same as an entire estate and as if the same were the sole property of one owner in fee simple; and they shall then apportion the said total amount of damages among the several parties whom they shall find to be entitled, in proportion to their several interests and to the damages sustained by them respectively; and they shall set forth such apportionment in their verdict." The commissioners further recommended that if any person having an interest in land or buildings as aforesaid who had been summoned in should neglect to appear and become a party to the proceeding, he should be forever barred from making any application for damages. Commissioners' Report, c. 24, §§ 42–47. And see note to the same at p. 153. This recommendation was adopted by the Legislature, became Rev. Sts. c. 24, §§ 48–53, and since then, with some amendments, has been the law of the Commonwealth. Gen. Sts. c. 43, §§ 53–58. Pub. Sts. c. 49, §§ 20–25. R. L. c. 48, §§ 20-.24.

The commissioners' statement of the reasons for this suggestion was in these words : " The provisions of these six sections, which are in the nature of a bill in equity, are intended to afford a more convenient means of doing justice to all parties in such cases."

By St. 1851, c. 290, it was provided that " Whenever any person shall have a claim for damages . . . having different or separate interests in the said property, so that an estate for life or for a term of years in the same belongs to one person, and the remainder or reversion in fee belongs to another," an entire sum shall be assessed without apportionment, and shall be paid over to a trustee upon trust to pay the income of the trust fund to the tenant for life or for years and on the termination of that estate to pay the principal to those entitled to the reversion. This (with an amendment made by St. 1883, c. 253) is now R. L. c. 48, §§ 17–19. For cases within these sections see *Bos-*

*ton* v. *Robbins*, 121 Mass. 453; *Turner* v. *Robbins*, 133 Mass. 207. See also *Edmands* v. *Boston*, 108 Mass. 535, 547. All other cases are within the provision originally adopted in Rev. Sts. c. 24, §§ 48–53, pursuant to the recommendation of the Commissioners (now R. L. c. 48, §§ 20–24.) See *Edmands* v. *Boston*, 108 Mass. 535; *Willard* v. *Boston*, 149 Mass. 176; *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 187 Mass. 45; *Galeano* v. *Boston*, 195 Mass. 64; *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 202 Mass. 585.

The purpose of these statutes regulating the method of procedure where a lot of land taken for a highway is owned by more than one person is twofold: First, to have the interdependent rights of all settled at the same time; and secondly, to establish the principle that the amount of damages to be paid where the same land is owned by several persons shall be determined as if it had been owned by one person in fee. This was stated in terms in the original act (Rev. Sts. c. 24, § 50), and is stated in terms in the present act (R. L. c. 48, § 22). It is this feature of the act which has been most often insisted upon by the court. In *Edmands* v. *Boston*, 108 Mass. 535, 544, Wells, J., said: "The situation of the estate and the manner of its occupation are doubtless to be taken into consideration in estimating the injury caused by disturbing that occupation. But between the public and the landowner it is but one estate. The public right is exercised upon the land itself, without regard to subdivisions of interest by which the subject is affected through the various contracts of individual owners. The public cannot be expected to forego its right to take property for public uses because the exercise of that right will defeat private contracts; nor is it reasonable that losses arising from the failure of such contracts, which otherwise might furnish grounds of damage between the individual parties, should measure the compensation to be rendered for the property so taken. Such a rule would seriously impair the public right. A fair compensation for the property taken and injury done, ascertained by general rules, is a substitute to the owners for that of which they are deprived. That is the whole of the transaction with which the public is concerned. The apportionment is merely a setting out to the several owners of partial interests of their corresponding

rights in the fund which has been substituted for the property taken." In *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 15, Gray, C. J., said: "But no contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole." To the same effect see Knowlton, C. J., in *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 187 Mass. 45, 50.

The parties who have a right to bring a petition for damages or to intervene in one brought by another are those who have an estate in the lot of land taken or damaged. There is no case in which any one but the owner of an estate in the land in question has been allowed to bring a petition for land damages or to intervene in one brought by another, and it was on this ground that the case of *Emery* v. *Boston Terminal Co.* 178 Mass. 172, was decided.

It was said in *Boston* v. *Robbins*, 121 Mass. 453, 455, that: "It was afterwards decided that these sections, in terms as well as in intent and spirit, were applicable to a tenancy in common, or to an estate in which one person had the legal title and another an equitable interest under a bond for a deed. *Dwight* v. *County Commissioners*, 7 Cush. 533. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush. 385." The second of these two cases (*Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*) is the case referred to above as the case in which it was decided that these sections were applicable to an estate in which one person held the legal title and another an equitable interest under a bond for a deed. In that case the Proprietors of Locks and Canals had given a bond to one Howard on May 14, 1844; the land was taken in August, 1846; Howard completed his payments on May 16, 1847, and received a deed at that time; and the petition was brought on July 11, 1850. Under these circumstances the Proprietors of Locks and Canals and Howard joined in bringing the petition for the sole benefit of Howard. What was decided and all that was decided was "that the respondents, as they cannot be injured by a single assessment, can take no exception." p. 387. This was pointed out by Colt, J., in *Drury* v. *Midland Railroad*, 127 Mass. 571, 578. More than that, the petition in *Proprietors of Locks & Canals*

v. *Nashua & Lowell Railroad* was brought to recover the injury done to the fee which was owned by the corporation when the land was taken, but which had passed to Howard under a prior contract before the petition was brought. The two were joined because this one fund had passed under a prior contract to Howard, not because it became necessary to apportion the amount due between the Proprietors of Locks and Canals and Howard. For that reason it was not a case under Rev. Sts. c. 24, § 48, at all.

By St. 1874, c. 388, it was provided that in cases provided for by St. 1851, c. 290, any special and peculiar damages suffered by a tenant should be assessed separately and paid to the tenant and not to the trustee. It was held in *Galeano* v. *Boston*, 195 Mass. 64, that in cases under the other section (where the fund is not paid to a trustee but is apportioned between the several persons whose estates together make up the fee) if there are damages special and peculiar to one tenant they should be dealt with in the same way.

The petition now before us is a petition for compensation for damages done by a decree for a change in a railroad private grade crossing made under R. L. c. 111, §§ 149 *et seq.*, and the statutes amending these statutes. By the terms of § 153, the highway acts stated above apply to such petitions.

We understand that the learned counsel for the petitioner in effect concedes that ordinarily the only person who can bring a petition for compensation is the owner of an estate in the land. His argument is that the option added to the value of the lessee's leasehold interest, and if it did he has asked with great insistence why the petitioner should not have compensation for the diminution in the value of all his rights under the lease including the option.

The objection to his contention which first presents itself is that it would be impossible to apportion the damage done to the land " as if it were the sole property of one owner in fee simple " between the lessee (who has an option to buy the fee if he elects to do so but not otherwise) and the owner of the fee subject to a lease for a fixed term of years and to this right of the lessee to purchase the fee at its election and only at its election.

But the real objection to this contention is that, although the

insertion in a lease of an option giving to the lessee at his option a right to buy the fee adds to the value of the lessee's rights under the lease, it is no part of the lessee's estate in the land. It is a contract right and nothing more, although contained in the lease and although it is a contract right which passes to an assignee of the lease.  It is not an extension or amplification of the lessee's estate.  Where a lease contains an agreement for an extension of the term thereby created it was assumed in *Stark* v. *Mansfield*, 178 Mass. 76, that the lessee should be treated as having an estate for the extended term.  But what a lessee gets by the exercise of an option to buy the fee is not an extension of the leasehold estate but a new estate of a different kind.  The lessee's rights under such an option are rights which lie in contract and do not create in the lessee any estate in the land. Being rights which lie in contract, the lessee as the holder of such an option cannot bring a petition for damage done to the land, or intervene in one brought by the owner of an estate in the land.  Neither can he in a petition brought by himself as lessee (to recover the compensation due for damage done to his estate in the land) have the value of his estate in the land increased by the value of the option.  As was said by Gray, C. J., in *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 15 : " But no contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole."

In such a case the holder of an option to buy is not remediless.  Where land of B on which A has an option of buying the fee is taken by the exercise of the paramount power of eminent domain, A can no longer at his election buy the land but he can at his election buy the fund into which in equity the land has been converted by the exercise of the power of eminent domain. The doctrine that the compensation paid for land taken by the exercise of the power of eminent domain in equity represents the land and is subject to all the rights of persons who had rights in the land, is a familiar doctrine resting on principles of general application.  See for example *Holland* v. *Cruft*, 3 Gray, 162 ; *Bates* v. *Boston Elevated Railway*, 187 Mass. 328, 337, and cases cited ; *Hunneman* v. *Lowell Institution for Savings*, 205 Mass.

441, 445, and cases cited. Indeed the provision of St. 1851, c. 290, (now R. L. c. 48, §§ 17, 18,) providing that when land taken is owned entirely by a lessor and lessee the fund shall be paid to a trustee and held by him on the same terms that the land was subject to, is based upon and is a statutory regulation of this principle of equitable conversion. As to this see Wells, J., in a portion of the opinion in *Edmands* v. *Boston*, 108 Mass. 535, 544, which we have already quoted.

In the case at bar, before the taking the Cornell-Andrews Company had the right at its election to buy the property covered by the lease on paying the price named therein. After the taking this right attached to the land and to the lessor's share of the damage done by the taking to the land covered by the lease. We are of opinion that the presiding judge should have given the eighth ruling asked for by the respondent without modification, and that the exception taken to his refusal to do so must be sustained.

We proceed to the consideration of several matters which will arise at the new trial.

When the first trial took place there were eight petitions before the court, consisting of four sets of two petitions each. Each set consisted of one petition against the Boston and Providence Railroad and of another against the town of Attleborough. The first set of two petitions (numbers 4497 and 4498) were petitions brought by the Cornell-Andrews Smelting Company for damage done to the land, buildings and machinery covered by the lease. The second set (numbers 4600 and 4601) were petitions brought by Watson, the lessor, and covered all his land west of the railroad (ten acres in extent), including the seventy-eight thousand feet let to the Cornell-Andrews Smelting Company. The third set (numbers 4604 and 4605) covered all Watson's land west of the railroad and south of Maple Street including the land let to the Cornell-Andrews Smelting Company. And the fourth set (numbers 4606 and 4607) covered Watson's land west of the railroad and north of Maple Street.* There were four sets of two petitions each in

---

* Maple Street, as stated in the former report of this case in 202 Mass. 585, 589, is the street shown on the plan there published as "roadway," "private way discontinued" and "private way."

place of four petitions because by the terms of the statute a petition had to be brought against the town for the damage done by laying out the new highway, and against the railroad for the damage done by the abolition of the crossing of Maple Street (which was a private way) over the railroad.

In both petitions brought by the Cornell-Andrews Smelting Company, (the lessee,) on motion made by it under R. L. c. 48, § 21, Watson the lessor was ordered to intervene. Pursuant to those orders he filed copies of the petitions in numbers 4600 and 4601 covering all his land west of the railroad, ten acres in extent.

The eight petitions came on for trial together, and Watson was required to elect between numbers 4600 and 4601, each of which covered the ten acres, and 4604, 4605, 4606 and 4607, in which the ten acres were divided into two parts as stated above. Watson elected to proceed with 4600 and 4601, each of which covered the whole ten acres, and the presiding judge directed verdicts to be entered for the respondents in numbers 4604, 4605, 4606 and 4607. The jury found two verdicts for the lessee in the two petitions brought by it (numbers 4497 and 4498), the first against the town and the other against the railroad; and two verdicts for the lessor in the two petitions brought by him (numbers 4601 and 4600), the first against the town and the other against the railroad.

The lessee's verdict in 4497 was set aside by the judge and its verdict in 4498 was set aside as the result of our decision in *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 202 Mass. 585. We infer from what appears that it has not yet been decided whether the verdicts in favor of the lessor in 4600 and 4601 are or are not to stand.

We are of opinion that when Watson the lessor was summoned in by the lessee to intervene in its petition he should have filed an intervening petition covering the land described in the lease and not one covering his whole ten acres. The lessee was not interested in the eight acres not covered by the lease and that land should not be made the subject of the intervening petition of the lessor in the lessee's petition.

After the order to Watson to intervene in the lessee's petition had been made, Watson's right to proceed under his separate

petitions (so far as his interest in the land covered by the lease was concerned) came to an end by force of R. L. c. 48, § 23, and his independent petitions for the recovery of damages to the leased land were not properly before the court. At the first trial the presiding judge stated to the jury that the lessor had intervened in both petitions brought by the lessee and he also told them, with respect to the land covered by the lease, " You are to assess the damages as a whole and then divide it " between the lessor and the lessee. But he then went on, ignoring the fact that the lessor had been required to intervene in the petitions brought by the lessee and the fact that the lessor's independent petitions (so far as the leased land was concerned) were no longer properly before the court, and took four verdicts, two in favor of the lessor on his independent petitions (which, as we have said, were not then properly before the court) and two in favor of the lessee on its petitions. Apparently the intervening petitions of the lessor were ignored and never have been disposed of.

It is manifest that the judge who presided at the first trial was wrong in taking separate verdicts fixing the damage done to the lessor and to the lessee, so far as the real estate covered by the lease (including the buildings and fixed machinery) was concerned. It is equally manifest that a mistake was made at the second trial when (ignoring the fact that the lessor had intervened in it) the lessee's petition against the railroad was tried before it had been ascertained whether the separate verdicts taken in the lessor's independent petitions were or were not to stand. No new trial should have taken place on the lessee's petition as a separate petition until the question whether the verdicts on the lessor's petitions were or were not to stand. That question has not yet been settled. If the verdicts in the lessor's petitions do not ultimately stand, the damage done to both lessor and lessee should be established by one verdict, as prescribed by R. L. c. 48, § 22, rendered in the petition or petitions brought by the lessee in which the lessor has been summoned in to intervene. Until the question has been decided whether the verdicts in the lessor's petitions are or are not to stand, no trial should be had on the lessee's petition.

The present status of these petitions has been brought into

further confusion by a statement made by the lessee's counsel in his argument when the case was first before this court. He then made a statement which was referred to in our former opinion, 202 Mass., at page 598, as a statement that " the lessor made no claim that the buildings and fixed machinery formed a part of his estate." The statement by the lessee was acquiesced in by the counsel for the respondent railroad and was referred to by us in our former opinion as a fact which was important in fixing the status of the litigation. We shall deal with this later on.

We have not until now referred to the fact that the buildings on the leased land at the date of the decree had been erected by the lessee at its own expense, and that there was in these buildings fixed machinery which had been attached to the freehold by the lessee and that this had been done at the lessee's expense.

Before considering the effect to be given to the statement of the lessee's counsel acquiesced in by the counsel for the railroad, we stop to point out how a case should be dealt with where leased land (on which buildings containing fixed machinery have been erected by the lessee) has been taken or damaged by the exercise of the power of eminent domain.

Such buildings at the time of the taking are part of the freehold and as such are the property of the lessor subject to the leasehold interest of the lessee for the unexpired term of the lease. In estimating the damage done in such a case an entire sum is to be found (and set forth in the verdict) as if the property were owned by one person in fee, and this entire sum represents the whole damage done to the realty including the buildings and fixed machinery. *Allen* v. *Boston*, 137 Mass. 319. *Williams* v. *Commonwealth*, 168 Mass. 364. But where the buildings and the fixed machinery are put in by the lessee at its own expense, they are trade fixtures which the lessee has a right to remove during the continuance of the lease. See *Smith* v. *Whitney*, 147 Mass. 479; *Antoni* v. *Belknap*, 102 Mass. 193; *Watriss* v. *National Bank of Cambridge*, 124 Mass. 571, 575. In such a case, before the taking the lessee had a right to remove the buildings and fixed machinery. After the taking, that right is transferred to the buildings and fixed machinery plus the damages done to them by the taking.

The obvious meaning of the statement of the lessee's counsel, as set forth in 202 Mass., at page 598, standing alone and carried to its logical conclusion, was that the damage done to the buildings and fixed machinery did not enter into the verdicts which the lessor had recovered, and that so far as any damage was done to the buildings and fixed machinery the lessee and the lessee alone always had had and still had the right to recover the whole of that damage.

But the respondent's counsel never have acceded to that as the true interpretation of what then took place. It seems that this statement was made by the lessee's counsel in answer to a question put by the Chief Justice to find out whether, having reference to the lessor's claim for damages, the lessee's separate petition could then be heard. Counsel for the respondent may well have understood that the statement in which he acquiesced, made in answer to that question, did not go to the length to which it goes standing by itself and as set forth in 202 Mass. 598. Counsel for the respondent has contended at great length in his brief in this case that under the charge of the presiding judge at the first trial the damage done to the lessor's reversionary interest in the buildings and fixed machinery was included in the verdicts rendered on the lessor's petitions, and that he never has agreed to any other view of the case. The lessor's petitions for damages set forth that the buildings here in question had been erected on his land, and asked for damages sustained by him as set forth in the petition; and in our opinion, under the charge of the judge at the first trial the lessor's share of damage done to the buildings and fixed machinery must be taken to have been included in the verdicts rendered on the lessor's petitions. If the lessor's proportion of the damage done to the buildings and fixed machinery was included in the verdicts rendered on the lessor's petitions, the effect of the acquiescence of the respondent's counsel in this statement would have been to make the respondent pay twice for the reversioner's share of the damage done to the buildings and fixed machinery. Further, there are two statements in the opinion in 202 Mass., one at p. 598 and the other at p. 599, which show that this court did not then give to this statement the meaning which it is now sought to have attached to it. After making the statement quoted above

this court said : " It will then be open under the allegations in the petition for the petitioner to recover the difference between the fair market value of the leasehold, including the improvements, as of the date of the decree, and its value as left after the building of the street to its westerly end, with the elevation of the bed of the railroad at the easterly end, cutting off the use of the spur track." By this was meant that at the new trial the lessee could recover the difference between the value of the leasehold interest in the real estate, including the land, buildings and fixed machinery, before and after the taking. Again on page 599 this court said: " The value of the lessee's option of purchase, provided for in the lease, can neither enhance nor diminish the petitioner's claim, as damages are assessed for injury to its interest as of the date of the taking." If by reason of the statement quoted above the lessee was to recover the whole damage done to the buildings and fixed machinery as if it always had been the sole owner of them, but so far as the land was concerned it was entitled to its leasehold interest only, the court would not have dealt with the option as it did. We are of opinion that under these circumstances the petitioner did not have the right to proceed on the basis that none of the damage done to the buildings and fixed machinery had been included in the verdicts recovered by the lessor on his petitions, and that the whole of it always had belonged to the petitioner and was to be recovered in this action.

The term of the lease to the Cornell-Andrews Company has now expired, and the lessee's right to remove the buildings and fixed machinery and to buy the fee under the option has in the absence of some further agreement come to an end. Some further agreement as to these matters may have been made between the parties. For these reasons it may be that at the new trial it will not be necessary to make the apportionments of the entire sum due for damage to the estate as if it were owned by one person in fee, which would have been originally necessary to preserve all the rights of lessor and lessee.

But if none of these matters has been thus eliminated by subsequent agreements and all the rights of the parties have to be established, the lessor should file an intervening petition covering his interest in the land subject to the lease. It was said by

Wells, J., in *Edmands* v. *Boston*, 108 Mass. 535, 547: "That statute [Gen. Sts. c. 43, § 17, now R. L. c. 48, § 17] is adapted to cases only in which the relation of tenant for life or years and remainderman exists without modification by contract between the parties or otherwise." The right of the lessee in the case at bar to remove the buildings and fixed machinery as trade fixtures takes this case out of § 17 and brings it within §§ 20–22. At the trial on the lessee's petition and that intervening petition the entire damage done to the land leased to the Cornell-Andrews Company, including the buildings and the fixed machinery put in them by the lessee, must be determined and set forth in the verdict. Then the amount of this entire damage (done to the leased land including the buildings and fixed machinery) must be apportioned between the lessor and lessee. If the lessee suffered any special damage during construction, or if its damage in the matter of access is different from that of the lessor (as seems to have been the case), those sums should be found and set forth in the verdict specially in addition to the sums mentioned above.

A further apportionment should be made of the lessor's share of the whole damage done to the real estate, so that his share of the damage done to the buildings and fixed machinery shall be separate from his share of the damage done to the land in order that the lessee may exercise its right of removing trade fixtures. That right, as we have said, after the taking covers the buildings and fixed machinery, and the damage done to them, including the lessor's share of that damage.

When the petitions are amended so that all damage done to the interests of the lessor and of the lessee in the land covered by the lease is covered by one petition and intervening petition, and the damage done to the lessor's other eight acres is covered by his independent petition, it will be proper to try them all together, as is provided in R. L. c. 48, § 29.

This brings us to a consideration of the questions raised by the petitioner's bill of exceptions.

The presiding judge allowed the respondent to introduce evidence which tended to show that at a comparatively small expense a way could have been constructed connecting the leased land with new Olive Street, and that the value of the land (belong-

ing to Watson the lessor) covered by the new way would have been small. In his charge the presiding judge instructed the jury that although he could not say that the petitioner was bound or was not bound to attempt to do those things, yet if they were satisfied that the possibility of his doing them would have affected the market value of the leased land (including the buildings and fixed machinery) after the taking, they could take that into account: "The purpose of the evidence is the effect it would have upon the market value of the property, the effect it would have upon the mind of the purchaser or person who desired to purchase the property. Just so far as those possibilities affect the market value of this property you may take them into consideration." Guarded as this evidence was by the instructions given to the jury, it was rightly admitted. See *New York, New Haven & Hartford Railroad* v. *Blacker*, 178 Mass. 386; *Cochrane* v. *Commonwealth*, 175 Mass. 299. The petitioner also took an exception to the judge's refusal to give its seventh, twelfth and thirteenth requests for rulings.* This exception goes to the same point.

The entry must be

> *Respondent's exceptions sustained; petitioner's exceptions overruled.*

*J. L. Hall*, for the respondent.

*J. W. Cummings*, (*C. R. Cummings* with him,) for the petitioner.

---

* The requested rulings were as follows: "7. There is no evidence that any effort on the part of the petitioner to obtain access to the street was practicable, and the petitioner's damages actually suffered cannot be diminished by the failure to make the attempt to obtain access to the street."

"12. (*a*) There is no evidence in this case that the market value of the petitioner's leasehold and improvements was in any way affected by any probability that the petitioner could buy a way out.

"(*b*) And the jury should not consider such probability if there be any.

"13. (*a*) There is no evidence that the market value of the petitioner's leasehold and improvements was in any way affected by the probability that a way could be got through the County Commissioners.

"(*b*) And the jury should not consider the probability of obtaining the way in such a manner if there be any."